**UNITED STATES of America, Appellee,**

v.

**Lynn Marie CAPPS, a/k/a Lynn Marie Joneson, Appellant.**

No. 91–1198.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 27, 1991.

Decided Dec. 30, 1991.

Jonathan Hammond, Cedar Rapids, Iowa, for appellant.

Daniel Tvedt, Asst. U.S. Atty., Cedar Rapids, Iowa, for appellee.

Before MAGILL, BEAM and LOKEN, Circuit Judges.

LOKEN, Circuit Judge.

Lynn Marie Capps challenges the 310 month sentence she received after pleading guilty to distribution of LSD within 1000 feet of a school, distribution of LSD to a minor, and conspiracy to possess with intent to distribute LSD, cocaine, cocaine base, and marijuana. Capps argues that the district court[1] erred in adjusting her offense level by four levels under U.S.S.G. § 3B1.1(a) for her aggravating role in the offense, and by two levels under § 3C1.1 for obstructing justice. We affirm.

*Aggravating Role.*

■ The district court assessed a four level upward adjustment based upon a finding that Capps was "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). We review this determination under the clearly erroneous standard. *See United States v. Sutera*, 933 F.2d 641, 649 (8th Cir.1991).

■ In applying § 3B1.1, the first question is whether the criminal activity

---

1. The HONORABLE DAVID R. HANSEN, United States District Judge for the Northern District of Iowa.

involved five or more participants. The district court found that at least six individuals (including Capps) had participated in her extensive drug dealing operations. Capps argues that the evidence was insufficient to establish that three of these persons—Krier, Sawvel, and Coffman—were participants in, as opposed to merely customers of, the conspiracy.[2] However, there was testimony at the sentencing hearing that Krier travelled with Capps to Davenport when she bought cocaine and was present in Capps's home when she sold drugs, and that Sawvel and Coffman distributed LSD for Capps and accompanied her on LSD purchasing trips to Cedar Rapids. Thus, the district court did not err when it included Krier, Sawvel, and Coffman as participants in the conspiracy. *See United States v. Johnson,* 906 F.2d 1285, 1291–92 (8th Cir.1990) (§ 3B1.1 requires only that the participant be "criminally responsible for the commission of the offense").

■ Because her criminal activity involved at least five participants, Capps's offense level must be increased four levels if she was an "organizer or leader" or three levels if she was a "manager or supervisor" of that activity. *See* U.S.S.G. § 3B1.1(a), (b). The district court expressly found that Capps was an organizer of this extensive conspiracy, explaining:

This defendant's house was the focal point for a large distribution scheme of LSD. This defendant is the one who had the contacts to come up with 800 hits of LSD. This is the person who decided on prices. This is the person who decided where the stash was to be kept. This is the person who recruited accomplices to help her in the location of the drugs and in the distribution of them.

This is the person who when she left the house authorized other people to make sales. This is the person who was considerably older than the bulk of the younger persons involved in the conspiracy, and she is the person to whom they

looked for assistance and guidance.... She is the one who organized and had the connections to get the drugs that they wanted.

The sentencing record fully supports these findings. Thus, the four level upward adjustment was properly imposed. *See* U.S.S.G. § 3B1.1, comment. (n. 3); *United States v. Johnson,* 906 F.2d at 1291–92.

*Obstruction of Justice.*

Capps argues that the district court erred in assessing a two level upward adjustment because she "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation ... of the instant offense." U.S.S.G. § 3C1.1. This issue turns on the effect of Capps's statement in a Dubuque bar that "Mike Harry was snitching on her and that she was bringing in some bikers to kick his ass and deal with the snitch."

At the sentencing hearing, a police officer testified that this comment was made to Richard Leslein "right after [Capps] was arrested or right in that time frame when she was becoming aware [of the investigation]"; that the police were told of this conversation by a concerned bartender who overheard it; and that Leslein had confirmed the bartender's report. At the time the comment was made, Harry was a conspirator who had become a confidential government informant.

■ Capps argues that an obstruction of justice adjustment was improper because the threat was never communicated to Harry. However, since the adjustment applies to attempts to obstruct justice, it is not essential that the threat was communicated to Harry if it reflected an attempt by Capps to threaten or intimidate her conspirators into obstructing the government's investigation. *See* U.S.S.G. § 3C1.1, comment. (n. 3a); *United States v. Shoulberg,* 895 F.2d 882, 884–86 (2d Cir.1990).

---

**2.** Capps's additional contention that Lloyd Harry may not be counted as a participant because he was an informer during part of the conspiracy period is frivolous. *See United States v.*

*Dyer,* 910 F.2d 530, 533 (8th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 276, 112 L.Ed.2d 232 (1990).

The words Capps spoke to Leslein conveyed an obvious threat against Harry, who was assisting the government investigation at that time. The question for the district court was whether those words were idle bar talk, or something more sinister. In considering that question, Capps urges us to apply former Application Note 2 to § 3C1.1, which provided that "suspect testimony and statements should be evaluated in a light most favorable to the defendant." *See United States v. Shortt*, 919 F.2d 1325, 1327 (8th Cir.1990). However, that commentary was deleted effective November 1, 1990; Application Note 1 now provides that "alleged *false* testimony or statements by the defendant ... should be evaluated in a light most favorable to the defendant." (Emphasis added.) This commentary is not applicable when the alleged obstruction of justice is the defendant's threats against witnesses or conspirators. *See United States v. Sabatino*, 943 F.2d 94, 101 (1st Cir.1991).

There was additional testimony at the sentencing hearing suggesting that Capps's threat against Harry was more than idle bar talk. Peter Otterbeck, another conspirator, testified that he overheard Capps tell a man known as "Stinger" that Harry had informed on one of the Grim Reapers (a local motorcycle gang) and that they should look for him. When asked whether Capps had asked Stinger to harm Harry, Otterbeck responded that "she was giving him ideas." Otterbeck and Francis Krier, another conspirator, both testified at the sentencing hearing that Capps had threatened them at various times during the conspiracy.

In these circumstances, the district court's finding that Capps attempted to obstruct justice was not clearly erroneous. The record reflects a conspiracy leader who was prone to threaten and intimidate her conspirators, and who communicated a violent threat against a key government informant at a critical point in the investigation and in a manner that frightened the bartender into reporting it to the authorities. This warranted a § 3C1.1 upward adjustment. *Compare United States v. Tallman*, 952 F.2d 164 (8th Cir.1991).

The judgment of the district court is affirmed.