**UNITED STATES of America**

v.

**Don A. THOMPSON (a/k/a John F. Shellington), Appellant.**

**No. 91–3091.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 19, 1992.

Decided May 8, 1992.

David Carey Wall (appointed by the Court), for appellant.

Albert A. Herring, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, and Bruce E. Yannett, Asst. U.S. Attys., were on the brief, for appellee.

Before WALD, WILLIAMS, and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

Dissent by Circuit Judge WALD.

D.H. GINSBURG, Circuit Judge:

After the appellant had been convicted of various drug offenses, the trial judge enhanced his sentence on the ground that he had testified falsely at trial. The appellant contends that his trial testimony was "simply a denial of guilt" and thus should not be treated as perjury for the purpose of enhancing his sentence. We conclude that the district judge's decision to enhance the appellant's sentence was not improper.

## I. BACKGROUND

Officer Mark Stone watched appellant Don Thompson through high-powered (7x50) binoculars for three hours, during which time Thompson engaged in what appeared to be eight separate drug transac-

tions. Officer Stone radioed for assistance in order to arrest Thompson and several officers came to the scene, which was an alley. When Thompson spotted them, he tossed the brown paper bag he had been holding into some nearby bushes and tried to leave.

After the officers arrested Thompson, they retrieved the bag and found in it sixty-four ziplock bags each containing cocaine base. A search of Thompson's person turned up $297 in cash. Thompson was charged with possession of cocaine base with intent to distribute and with distribution of cocaine base, both within 1000 feet of a public school. *See* 21 U.S.C. §§ 841(a)(1), (b)(1), 845a(a).

At trial one of the arresting officers testified that Thompson was the only person in the alley who matched the detailed body and clothing description that Officer Stone had given them. Subsequent to the arrest, Stone himself identified Thompson as the man he had observed selling drugs. At trial, Officer Stone again identified Thompson as the vendor.

Thompson's defense was mistaken identity. He testified that he had been playing chess in a courtyard leading to the alley where the drug sales had occurred but had not been in the alley and certainly had not been selling drugs. His sister and four other witnesses also testified in his defense at trial, each corroborating some part of Thompson's testimony. (For example, his sister said that she had given him $250 just two days before the arrest; one friend said he had been playing chess with Thompson during the time of the drug sales, another that the bag Thompson discarded was the one in which she had brought him a beverage from a nearby store.)

The jury found Thompson guilty on all counts. The Probation Office recommended that the court enhance Thompson's sentence two offense levels for obstructing justice by giving perjured testimony and suborning the perjury of others. Section 3C1.1 of the Sentencing Guidelines (Nov. 1, 1990) instructs a trial judge to increase the offense level by two if:

the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense....

According to Application Note 3(b), "committing, suborning, [and] attempting to suborn perjury" are among the types of conduct that warrant an enhancement for obstruction of justice.

After hearing argument on the enhancement issue, Judge Lamberth determined that although he did not believe the testimony of Thompson's sister, he could not conclude that Thompson had suborned her to commit perjury. On the other hand, the judge determined not only that Thompson "did testify untruthfully" but "that he has, in fact, obstructed justice" thereby. Accordingly, he enhanced Thompson's sentence by two offense levels.

## II. ANALYSIS

■ On appeal, Thompson "submit[s] that [his] testimony was simply a denial of guilt" and seeks refuge in Application Note 1 for Guideline § 3C1.1, which cautions:

This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury) ... is not a basis for application of this provision. In applying this provision, the defendant's testimony and statements should be evaluated in a light most favorable to the defendant.

Citing cases in each of which an enhancement was imposed after the defendant's testimony was deemed by the trial judge to have been "inherently implausible," "replete with internal contradictions," or a "fairy tale," *United States v. Matos*, 907 F.2d 274, 276 (2d Cir.1990); *United States v. Wallace*, 904 F.2d 603, 605 (11th Cir. 1990); *United States v. Akitoye*, 923 F.2d 221, 229 (1st Cir.1991), Thompson argues in essence that a sentence can be enhanced for perjury only if the defendant's testimony is utterly preposterous. Because his testimony "told a plausible version of events," Thompson asserts, "the [district] court should not have had a firm conviction that [he] lied."

■ We disagree with Thompson's reading of the Guidelines. On its face, § 3C1.1 does not require that a defendant's false testimony be implausible or particularly flagrant. Rather, the sentencing judge need find only that the defendant willfully committed, suborned, or attempted to suborn perjury in order to obstruct justice. The admonition in Application Note 1 to evaluate the defendant's testimony "in a light most favorable to the defendant" apparently raises the standard of proof— above the "preponderance of the evidence" standard that applies to most other sentencing determinations, *see United States v. Burke*, 888 F.2d 862, 869 (D.C.Cir. 1989)—but it does not require proof of something more than ordinary perjury. To limit enhancements only to cases of internally contradictory testimony or flagrant lying—or to permit enhancements only when no reasonable trier of fact could have found other than that the defendant lied—would be merely to reward the polished prevaricator while punishing those less practiced in the art of deception. We do not think that the Guidelines contemplate this distinction between different degrees of willful lying.

■ Thus, the sentencing court must determine whether the defendant testified (1) falsely, (2) as to a material fact, and (3) willfully in order to obstruct justice, not merely inaccurately as the result of confusion or a faulty memory. *See* 18 U.S.C. § 1621; *see also United States v. Jordan*, 890 F.2d 968 (7th Cir.1989) (false statement about drug use during sentencing stage of criminal proceeding considered material); *United States v. Lofton*, 905 F.2d 1315, 1317 (9th Cir.1990) (" 'willfully' requires that the defendant consciously act with the purpose of obstructing justice"); *United States v. Christman*, 894 F.2d 339 (9th Cir.1990) (same). When the jury has answered the first question by finding beyond a reasonable doubt that the defendant lied, and could not have convicted otherwise, it might be anomalous for the judge to sentence the defendant upon the basis of the

jury verdict and yet refuse to enhance the sentence for perjury merely because the judge entertains a doubt that the defendant lied. *Cf.* FED.R.CRIM.P. 29(a) (court shall direct acquittal "if the evidence is insufficient to sustain a conviction"). We do not express an opinion, however, as to whether it would be an error; after all, the judge's decision to let the case go to the jury says only that a reasonable jury could find guilt beyond a reasonable doubt, not that a reasonable judge would necessarily agree.

In the case before us, Thompson's story, if believed, would have been a complete bar to conviction. Although not wildly implausible, the jury did not in fact believe that story; they concluded beyond a reasonable doubt that Thompson was lying. Judge Lamberth unequivocally stated at the sentencing hearing that he found Thompson's testimony untruthful and an obstruction of justice.

Mindful of the deference that we owe the findings of the sentencing court, *see* 18 U.S.C. § 3742(e) (in reviewing a sentence, "[t]he court of appeals shall ... accept the findings of fact of the district court unless they are clearly erroneous"), we conclude that it was not error to enhance Thompson's sentence by two offense levels for obstruction of justice. Accordingly, the sentence imposed by the district court is

*Affirmed.*

WALD, Circuit Judge, dissenting:

This case puts in issue the proper application of § 3C1.1 of the United States Sentencing Guidelines to alleged false testimony by a defendant at trial. The Guideline reads:

§ 3C1.1 Obstructing or Impeding the Administration of Justice

If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

My colleagues agree that the sentencing judge cannot rely solely upon the jury's verdict to enhance a sentence under § 3C1.1; she must make a specific finding

herself that the defendant's statements under oath were false as to a material fact and were willful attempts to obstruct justice. Majority opinion ("Maj. op.") at 1071–72. *See, e.g., United States v. Lozoya-Morales,* 931 F.2d 1216, 1218–19 (7th Cir. 1991); *United States v. Husky,* 924 F.2d 223, 224–25 (11th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 111, 116 L.Ed.2d 81 (1991); *United States v. Martinez,* 922 F.2d 914, 926 (1st Cir.1991); *United States v. Beaulieu,* 900 F.2d 1537, 1540–41 (10th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 3252, 111 L.Ed.2d 762 (1990). My colleagues and I disagree, however, on the standard the Guidelines mandate for the judge to make that finding.

The drafters of the Guidelines provided "Commentary" to § 3C1.1, which is intended "to interpret the guideline or explain how it is to be applied," *see* U.S.S.G. § 1B1.7. That Commentary states in relevant part:

Application Note 1. This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury) ... is not a basis for application of this provision. In applying this provision in respect to alleged false testimony ... made by the defendant, such testimony ... should be evaluated in a light most favorable to the defendant.

This Application Note treats enhancements based on alleged perjury by the defendant differently from enhancements based on corruption of witnesses, destruction of documents, or other types of obstruction where the judge must find by a preponderance, evaluating the evidence evenhandedly, that the obstructions occurred. In the case of an enhancement based on the defendant's alleged false testimony, the Commentary draws instead on the standard language used for a directed verdict:

In reviewing the denial of a directed verdict, the standard we apply is the same as that applied by a district court considering the motion in the first instance. Viewing the evidence *in the light most favorable to the non-moving party, we*

*must ask ourselves whether any reasonable jury could find in its favor.*

*Harbor Ins. Co. v. Schnabel Foundation Co.,* 946 F.2d 930, 935 (D.C.Cir.1991) (citing *Klein v. District of Columbia,* 409 F.2d 164, 167 (D.C.Cir.1969)) (emphasis added); *see also* CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE, § 2524 at 545–46 (1971 and Supp.1991). I believe that § 3C1.1 similarly requires that the trial judge find that viewing the testimony in a light most favorable to the defendant, no reasonable trier of fact could find other than that perjury had been committed.

The parallel language used in Application Note 1 of § 3C1.1 and in the directed verdict standard was not coincidental. Indeed, the Eighth Circuit has ruled that the proper application of § 3C1.1 to a defendant's alleged false testimony requires the sentencing judge to find that *no reasonable trier of fact* could have found the testimony truthful. *See United States v. Willis,* 940 F.2d 1136, 1140 (8th Cir.1991) ("No enhancement should be imposed based on the defendant's testimony if a reasonable trier of fact could find the testimony true."); *United States v. O'Meara,* 895 F.2d 1216, 1222 (8th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990) (Bright, J., concurring in part and dissenting in part) (same); *see also United States v. Seabolt,* 958 F.2d 231 (8th Cir. 1992) (per curiam) (upholding sentencing judge's finding under "no reasonable person" standard).

The analogy to the directed verdict standard used in civil cases might at first blush seem inapposite in a criminal case. Under the Guidelines, however, virtually all sentence enhancements or reductions are in fact determined under the civil "preponderance of the evidence" standard. And, although credibility determinations are generally left to the jury in civil as well as criminal cases, the judge in deciding a motion for a directed verdict at the close of the evidence, must make a threshold assessment of the truthfulness of a plaintiff's testimony. David Dow, *Judicial Determination of Credibility in Jury-Tried Actions,* 38 NEB.L.REV. 835, 839–42 (1959). If

no reasonable juror could find for the plaintiff because of the inherent incredibility of his testimony, the judge must direct a verdict for the defendant. Thus the adoption of the "no reasonable person" directed verdict standard to a sentencing enhancement determination of whether the defendant has committed perjury at trial is altogether reasonable.

My colleagues worry that to interpret Application Note 1 more broadly in order to limit the applicability of § 3C1.1 to alleged false testimony, "would be merely to reward the polished prevaricator while punishing those less practiced in the art of deception." Maj. op. at 1071. But that argument assumes the answer to the critical question. That question is not whether to punish "different degrees of willful lying," *id.,* but by what standard to decide in the first place whether a defendant has in fact willfully lied. Under § 3C1.1, the defendant is declared a perjurer and his punishment is substantially enhanced on the determination of the sentencing judge only. It is enormously important under what strictures the sentencing judge makes that decision. Application Note 1 admonishes the judge not to punish the defendant for exercising his constitutional right to testify in his own defense, and further provides a standard by which the judge is to view the defendant's testimony should he choose to take the stand: she is to evaluate his testimony "in a light most favorable" to the defendant. The majority appears to agree that this instruction "raises the standard of proof," Maj. op. at 1071, but then declines to follow through with any meaningful criteria for applying the higher standard of proof to alleged false testimony. It affirms the enhancement based solely upon the "unequivocal[ ]" yet *subjective* view of the sentencing judge. The "in a light *most* favorable" language surely must require more than that. Perhaps, had the Guidelines merely told judges to evaluate the defendant's testimony "favorably" or "in a favorable light," this reliance upon the judge's subjective belief might be proper. But they went farther; significantly, the drafters borrowed a standard familiar to

all trial judges: the admittedly high standard of "no reasonable trier could believe otherwise" required before a trial judge can direct a verdict.[1]

The Guidelines drafters wrote against the troubling backdrop of the effect of an enhanced penalty arising out of a defendant's testimony on the exercise of his constitutional right to testify in his own defense. Indeed, the Application Note to § 3C1.1 specifically states it is not intended to penalize that right, and it is that concern, I believe, which impelled the drafters to consciously set a higher standard for the judge in imposing an enhancement based on trial testimony. The higher standard provides an extra safeguard against mistakes by the judge.[2] For if the directed verdict standard is employed, the judge must evaluate the testimony not just subjectively according to her own beliefs, but objectively as to whether any reasonable trier could have believed the defendant.

This higher standard provides greater assurance to a defendant that he may take the stand and testify without being subjected to enhanced punishment for having done so. Not all persons accused of crime who testify at trial commit perjury. And even some defendants who testify truthfully are

1. Admittedly, several other circuits have interpreted Application Note 1 in a manner consistent with the majority's position. *See, e.g., United States v. Akitoye,* 923 F.2d 221, 228 (1st Cir.1991); *United States v. Wallace,* 904 F.2d 603, 605 (11th Cir.1990); *United States v. Barbosa,* 906 F.2d 1366, 1370 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 394, 112 L.Ed.2d 403 (1990). All of these courts have relied upon the Fifth Circuit decision in *United States v. Franco–Torres,* 869 F.2d 797, 801 (5th Cir.1989), in which the court ruled that Application Note 1 "simply instructs the sentencing judge to resolve in favor of the defendant those conflicts about which the judge, after weighing the evidence, has no firm conviction." 869 F.2d at 800. That case, revealingly, did not itself involve an enhancement for false trial testimony. These other circuits that have somewhat perfunctorily applied § 3C1.1 to alleged false testimony apparently overlooked the crucial distinction discussed in Application Note 1 between the judge's role in evaluating alleged false testimony and other types of conduct that obstruct justice. *See United States v. Capps,* 952 F.2d 1026 (8th Cir. 1991).

At the time of the *Franco–Torres* decision, it was not clear that the "in a light most favorable" language was intended to apply only to a defendant's trial testimony. In *Franco–Torres,* the defendant allegedly shot at police officers when they attempted to arrest him, and tried to hide evidence of the crime. The government asked for enhancements for obstructions of justice based on those actions. At the sentencing hearing, the defendant took the stand and denied the obstruction allegations, and then argued that the "in a light most favorable" language in the Commentary required the judge to find in his favor. At that time Application Note 1 read:

In applying this provision, suspect testimony and statements should be evaluated in a light most favorable to the defendant.

The court, predictably, ruled that the "in a light most favorable" language could not help the defendant under those circumstances; otherwise, any defendant who could plausibly deny that he obstructed justice at the sentencing hearing could avoid the enhancement. The court did not purport to give the definitive meaning to the effect of Application Note 1 to a defendant's *trial testimony.* The Commission later "clarifie[d] the operation of § 3C1.1" with an amendment to Application Note 1:

In applying this provision, the defendant's testimony and statements should be evaluated in a light most favorable to the defendant.

The present version resulted from a further amendment, which proved necessary to clarify that the heightened protection of the "in a light most favorable" language was intended to cover only the defendant's trial testimony. Again, this latest amendment intended no substantive change, but "more precisely state[d] the meaning of this commentary."

2. In a variety of contexts, the Supreme Court has required extra procedural protections when significant interests are at stake. *See e.g., California ex rel. Cooper v. Mitchell Bros. Santa Ana Theater,* 454 U.S. 90, 93, 102 S.Ct. 172, 173, 70 L.Ed.2d 262 (1981) (per curiam) (collecting cases where the "clear and convincing" evidence standard is applied, including libel, deportation, and denaturalization). *See also, Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (grounds for termination of parental rights must be proven by "clear and convincing" evidence); *Addington v. Texas,* 441 U.S. 418, 423, 99 S.Ct. 1804, 1807, 60 L.Ed.2d 323 (1979) (grounds for civil commitment must be proven by "clear and convincing" evidence); *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) (requiring proof "beyond reasonable doubt" of the absence of passion or sudden provocation in murder trial); *Specht v. Patterson,* 386 U.S. 605, 610, 87 S.Ct. 1209, 1212, 18 L.Ed.2d 326 (1967) (requiring "procedural safeguards" of trial-type hearing before state may impose increased sentence under separate "Sex Offenders Act").

convicted.[3] Defendants, aware of these facts, are more likely to refrain from testifying, if there is no obstacle to their receiving greater punishment after conviction based solely upon the judge's own perception that they have lied. A standard requiring more than the judge's mere subjective belief, on the other hand, lessens to a degree the inherent deterrent effect of § 3C1.1 enhancements.

Finally, the reality of how § 3C1.1 works in practice to enhance a defendant's sentence should caution against too begrudging an interpretation of Application Note 1. An increased sentence under § 3C1.1 is not a discretionary option for a sentencing judge under the Guidelines. If the prosecutor moves for an enhancement because of alleged perjury, the judge must decide whether the defendant testified untruthfully. If the judge personally believes the defendant lied at trial, under the majority's rule she has no choice but to enhance the sentence, regardless of how close a call she must make to resolve the question.[4]

As a practical matter, then, every defendant who chooses to take the stand puts himself at the mercy of the prosecutor and the judge's subjective view of the evidence as to whether his sentence will be more severe because he has exercised his Fifth Amendment right. I find it difficult to believe that the Guidelines intended that the fundamental right to testify in one's own defense should be left so vulnerable to the prosecutor's judgment and the trial judge's subjective belief. I think it was intended to be an unusual rather than a routine sentence enhancement, to be applied only when no reasonable trier could conclude other than that the defendant had perjured himself. Only in that way can the "light most favorable" instruction be given any substantive effect.

I would therefore vacate Thompson's sentence, and require the district judge to determine on remand that no reasonable trier of fact could have believed Thompson's testimony before enhancing his sentence under § 3C1.1.

---

3. *See United States v. Grayson,* 438 U.S. 41, 57, 98 S.Ct. 2610, 2619, 57 L.Ed.2d 582 (1978) (Stewart, J., dissenting) (noting the inhibiting effect on exercise of right to testify by "defendant's rational fear that his truthful testimony will be perceived as false").

4. It was the "wooden and reflexive" nature of § 3C1.1 that led the Fourth Circuit to hold unconstitutional enhancements for alleged perjury based on the defendant's trial testimony, *see United States v. Dunnigan,* 944 F.2d 178, 183–84 (4th Cir.1991) (citing *Grayson,* 438 U.S. at 41, 98 S.Ct. at 2610). *But see United States v. Willis,* 940 F.2d 1136, 1140 (8th Cir.1991); *United States v. Contreras,* 937 F.2d 1191 (7th Cir.1991); *United States v. Batista–Polanco,* 927 F.2d 14, 22 (1st Cir.1991); *United States v. Matos,* 907 F.2d 274, 276 (2nd Cir.1990); *United States v. Barbosa,* 906 F.2d 1366, 1369 (9th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 394, 112 L.Ed.2d 403 (1990); *United States v. Wallace,* 904 F.2d 603, 604–05 (11th Cir.1990); *United States v. Keys,* 899 F.2d 983 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 160, 112 L.Ed.2d 125 (1990); *United States v. Acosta–Cazares,* 878 F.2d 945, 953 (6th Cir.), *cert. denied,* 493 U.S. 899, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989). The constitutionality of § 3C1.1 as applied to alleged false testimony has not been raised by this defendant.