**UNITED STATES of America**

v.

**Blaine A'mmon WHITE, Appellant.**

**No. 92–3130.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 14, 1993.

Decided July 27, 1993.

Blaine A'mmon White, pro se.

Valinda Jones, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., at the time the brief was filed, John R. Fisher and Eric A. Dubelier, Asst. U.S. Atty., were on the brief, for appellee.

Before: MIKVA, Chief Judge, SILBERMAN and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Appellant claims that his convictions for passport fraud and for aiding and abetting passport fraud violated the Double Jeopardy Clause. He also raises a number of challenges to his sentence under the Sentencing Guidelines. We affirm the convictions and reject appellant's objections to his sentence.

## I.

The facts are essentially undisputed. Acting on behalf of a client on November 1, 1989, Blaine White, who is an attorney, obtained a birth certificate from the Maryland vital records office bearing the name William S. Baldwin. Subsequently, on November 13, he signed an affidavit in support of the same client's application for a United States passport. White swore that he had known the applicant for five years, that he knew the applicant was a United States citizen, and that the applicant's name was William S. Baldwin. The birth certificate was used as proof of identity in the passport application.

Appellant was originally charged in a two-count indictment with document fraud, 18 U.S.C. § 1028(a)(4), and passport fraud, 18 U.S.C. § 1542. Section 1028(a)(4) makes it a crime to "knowingly possess[ ] an identification document (other than one issued lawfully for the use of the possessor) or a false identification document, with the intent such document be used to defraud the United States," and section 1542 makes it unlawful to "willfully and knowingly make[ ] any false statement in an application for [a] passport."

The government attempted to establish that White had been involved in a scheme to obtain false identification documents for a Canadian citizen, Harold D. Linden, a/k/a Norman Harold Moore, who was residing in this country illegally and who had retained White as an attorney. The real William S. Baldwin had died two days before White applied for the birth certificate (his obituary appeared in the newspaper on October 31) and the government sought to prove that White knew he was obtaining the dead man's birth record. An official from the vital records office testified that White received the birth certificate under a special procedure that the office used to allow attorneys to obtain the records of deceased persons. Had Baldwin still been alive, White could not have obtained the certificate without a notarized authorization from Baldwin himself. White testified, however, that his client, the individual identified at trial as Harold Linden, had always been known to him as William Baldwin, and that he had no idea that there was any special procedure used in issuing deceased persons' records. Thus, White claimed that he had no idea that he was acquiring a dead person's birth certificate and asserted that the affidavit he signed at the passport office was true to the best of his knowledge.

The jury acquitted White of document fraud under section 1028(a)(4), but could not reach a verdict on the passport charge. The district judge declared a mistrial on the latter count and dismissed the charge without prejudice.

White was subsequently reindicted on a five-count indictment that charged, among other crimes, making false statements in an affidavit accompanying a passport application, 18 U.S.C. § 1542 (Count IV) (this was the same charge on which there had been a hung jury in the first trial) and aiding and abetting Linden in making false statements in a passport application "by supplying Linden with a false name, William Smith Baldwin, and false Social Security number" (Count V). According to the government, appellant not only provided Linden with a birth certificate, but also copied a Social Security number from a client's file in his law firm and gave the number to Linden to use on the passport application. Appellant moved to dismiss the charges on double jeopardy grounds. According to appellant, the jury in the first trial conclusively determined that he did not know that Linden was not William Baldwin. Any subsequent prosecution that would call into question that jury determination would be barred by the collateral estoppel component of the double jeopardy protection. *See Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). Appellant also contended that under *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), evidence of his

conduct in obtaining the birth certificate could not be used in any subsequent prosecution because he had already been acquitted on the document fraud count.

The district court denied appellant's motion, *see United States v. White*, 757 F.Supp. 45 (D.D.C.1990), and appellant brought an interlocutory appeal. We rejected appellant's collateral estoppel argument and held that the jury's verdict in the first trial did not conclusively determine the issue of appellant's knowledge. *See United States v. White*, 936 F.2d 1326, 1329 (D.C.Cir.) (*White I*), *cert. denied*, —— U.S. ——, 112 S.Ct. 381, 116 L.Ed.2d 332 (1991). We reasoned that, had the jury actually concluded that appellant did not know of Linden's double identity, it would also have acquitted appellant on the passport charge. *See id.* In that interlocutory appeal, we did not reach the question whether *Grady v. Corbin* barred prosecution of Count V (aiding and abetting passport fraud), because the government agreed to limit its use of the evidence concerning the acquisition of the birth certificate. *See id.* at 1330. The government conceded that it could not "prove either the conduct of unlawfully procuring the birth certificate from the vital records office with intent to defraud the U.S. at that time, or of unlawfully possessing it with such intent at the passport office, as an essential element of the offenses charged in the second indictment." *Id.* at 1330 n. 2.

In the second trial, the government reintroduced part of the evidence it had used in the first trial relating to the document fraud charge. The jury convicted on both Counts IV and V but acquitted appellant on all other counts.

## II.

### A.

■ Appellant relies exclusively on the Supreme Court's decision in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), to argue that in his second trial the government violated the Double Jeopardy Clause, *see* U.S. CONST., Amend. 5 ("[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb."), by prosecuting him for the same

offense of which he was acquitted in the first trial. But *Grady* has been overruled, *see United States v. Dixon*, —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), and the Supreme Court has made clear that the so-called *Blockburger* test is the sole test for determining whether the crimes charged in successive prosecutions are the "same offense" for double jeopardy purposes. *See id.* —— U.S. at ——, 113 S.Ct. at 2860; *see also Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The *Blockburger* analysis focuses strictly on the statutory elements of crimes: two offenses are not the same as long as each requires proof of an element the other does not. *See Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182.

There can be little doubt that document fraud under 18 U.S.C. § 1028(a)(4) is not the same offense as either passport fraud or aiding and abetting passport fraud under 18 U.S.C. §§ 1542 & 2. Under section 1028 the government must prove that the accused (i) knowingly possessed an identification document, (ii) that was not lawfully issued for his use, (iii) with the intent to defraud the United States. Passport fraud, in contrast, requires proof that the accused (i) willfully and knowingly make a false statement in a passport application, (ii) with the intent to secure issuance of a United States passport contrary to the laws and regulations governing the issuance of passports. Even if we were to assume, *arguendo*, that the nature of the intent required in each crime was essentially the same, each statute still requires proof of an element the other does not. Document fraud under section 1028 requires possession of an identification document, while passport fraud under section 1542 requires proof that the accused made a false statement in a passport application. The elements could hardly be more distinct. And, of course, aiding and abetting passport fraud must, *a fortiori* require proof of an element that document fraud does not, because the government must prove both that someone committed the principal offense, *see, e.g., United States v. Raper*, 676 F.2d 841, 849 (D.C.Cir. 1982), and that the accused aided and abetted commission of the crime. Thus, the government must prove the same elements of pass-

port fraud—which, as we have already noted, are different from those for the offense of identification document crime described in section 1028—and then must prove aiding and abetting. Even if the government sought to prove aiding and abetting by referring to exactly the same conduct that it previously had attempted to use to prove document fraud—that is, if the government sought to prove aiding and abetting by the very act of acquiring the dead man's birth certificate—it would not offend the Double Jeopardy Clause. The same actions can constitute an offense under two distinct statutes and can be prosecuted separately under each as long as the statutes do not define a single offense under *Blockburger*. *See Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182 (quoting *Morey v. Commonwealth*, 108 Mass. 433 (1871)).

In short, sans *Grady*, which directed double jeopardy analysis to the government's reproof of the same conduct, appellant is left without support for his double jeopardy claim. The prosecutions for passport fraud and aiding and abetting passport fraud therefore do not violate appellant's rights under the Double Jeopardy Clause.[1]

### B.

■ Appellant claims that the evidence was insufficient to support his conviction for passport fraud. Appellant raises this argument for the first time on appeal—he moved for judgment of acquittal on only one count of the indictment, a conspiracy charge on which he was acquitted. We therefore review the challenge to the sufficiency of the evidence only for plain error. *See United States v. Sayan*, 968 F.2d 55, 62 (D.C.Cir. 1992). We admit we are not sure exactly what standard is implied by plain error review on a sufficiency of the evidence· challenge. Presumably review should be more deferential than under the usual standard

under which we determine only "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). But it is hard to imagine that more deferential standard. The *Jackson* standard already suggests that we would only reverse for an error that was "plain" (in the sense of "obvious") and requires, by definition, that the error prejudice substantial rights.

■ We need not decide exactly how plain error review might modify the standard in this context, however, because even under the *Jackson* standard, there was sufficient evidence to support a conviction. We must, of course, in applying *Jackson* "consider the evidence in the light most favorable to the Government," *United States v. Jefferson*, 974 F.2d 201, 205 (D.C.Cir.1992), and allow the government "the benefit of all reasonable inferences that may be drawn from the evidence," *United States v. Sutton*, 801 F.2d 1346, 1358 (D.C.Cir.1986). Appellant admitted signing the affidavit; thus, the government needed to prove only that appellant knew that the affidavit was false and that he intended to help Linden secure a passport. *See* 18 U.S.C. § 1542. The government presented ample evidence concerning Linden's aliases and White's knowledge of them—including evidence that White had wired Linden money under the name Norman Moore and testimony suggesting that White knew he was obtaining a dead man's birth certificate—for a reasonable jury to conclude that White knowingly signed a false affidavit and intended to help Linden obtain a passport.

### C.

■ Appellant raises a number of challenges to his sentence. White first contends

---

1. Appellant asks us to revisit the question he presented on interlocutory appeal concerning the collateral estoppel effects of his acquittal. According to appellant, the jury in the first trial decided that he did not know that his client was not William Baldwin. We have already held, however, that the jury in the first trial did not conclusively determine that appellant did not

know Linden's true identity. *See White I*, 936 F.2d at 1329. That holding is the law of the case, and there is no reason for us to disturb it. *See Lever Bros. Co. v. United States*, 981 F.2d 1330, 1332 (D.C.Cir.1993) (court must follow law of the case unless convinced that prior decision was erroneous and that adherence to the decision would work a grave injustice).

that the court erred in denying him a three-level reduction pursuant to section 2L2.3 of the Sentencing Guidelines for committing the passport offense "other than for profit." U.S.S.G. § 2L2.3. The district judge denied the reduction based on a finding that White was paid for helping Linden in his passport fraud scheme. Fact-findings in a sentencing context need be supported only by a preponderance of the evidence, *see United States v. Burke*, 888 F.2d 862, 869 (D.C.Cir.1989), and "we will 'uphold the district court's sentence so long as it results from a correct application of the guidelines to factual findings which are not clearly erroneous.'" *United States v. Barry*, 938 F.2d 1327, 1332 (D.C.Cir.1991) (quoting *United States v. Young*, 932 F.2d 1510, 1512 (D.C.Cir.1991)).

■ Here, we do not think the district judge erred at all. The government introduced evidence at the trial and at sentencing to show that White had established a trust account for Linden and that both on November 1 (the same day that he obtained the birth certificate) and on November 3, White drew checks on the account, made out to "cash," for $2,600 and $2,000, respectively. The $2,600 check bore the notation "Documents of identification per client," and the other check had the notation "I.D. per client." White contended that he gave this money to Linden but produced no evidence supporting that claim, and Linden denied receiving the funds. The defendant "properly bears the burden of proof under those sections of the Guidelines that define mitigating factors," *Burke*, 888 F.2d at 869 n. 10, and thus appellant had the burden of proving that he did not assist Linden for profit. The district judge reasonably concluded that the checks were payment to White for his role in obtaining the birth certificate and subsequently the passport.[2]

■ Appellant also challenges the two-level enhancement he received under section 3C1.1 for obstruction of justice. The district judge based the enhancement on a finding that White committed perjury in his trial testimony. *See* U.S.S.G. § 3C1.1 Application Note 3(b) (listing perjury as an example of the type of conduct to which the enhancement applies). White testified that he honestly believed that Linden was in reality William Smith Baldwin. The jury, however, found White guilty beyond a reasonable doubt of knowingly signing a false affidavit. That verdict virtually made it a foregone conclusion that a district judge would conclude by a preponderance of the evidence that White testified falsely when he stated that he thought that Linden was Baldwin. We certainly cannot say that it was clear error for the district judge to reach that conclusion. Nor can we find any error in the district judge's implicit decision that, in a case in which the question was so clearly and starkly posed, White testified willfully, not merely as a result of confusion or faulty memory. *See United States v. Thompson*, 962 F.2d 1069, 1071 (D.C.Cir.1992).

■ Appellant contends that he should not have received a sentencing enhancement pursuant to section 3B1.3 for abuse of a position of trust or for use of a special skill. The district judge based the enhancement in part on White's use of his skill as a lawyer to facilitate the commission of the crime, and in part on his abuse of trust in stealing a client's Social Security number from his law firm's files. Application Note 2 to section 3B1.3 explicitly includes lawyers as examples of individuals who possess the "special skill" referred to in the Guideline. By setting up a trust account, which he later used to pay himself for his own part in the scheme, White used his skill to further the crime in this case. The sentencing court also properly relied on White's use of his special skill in obtaining the birth record of a dead man. Ordinary members of the public not known to officials in the records office as attorneys would not have been able to acquire the same certificate.

■ Although White's use of his special skill sufficed in itself to justify the enhancement, the district court also considered his

---

2. We need not decide whether, as the trial judge appeared to suggest, appellant's position as attorney for Linden (he was presumably being paid for his services) would have been sufficient to show that he committed the crime for profit absent some more direct evidence of payment for his particular role in the criminal enterprise.

abuse of a position of trust. The court determined by a preponderance of the evidence that White provided Linden with a Social Security number from his firm's client files. Although appellant claimed that Linden had unsupervised access to the files and could have obtained the Social Security number himself, we cannot say that the court's finding was clearly erroneous. Providing Linden with the information clearly abused a position of trust within the meaning of the Guideline. The relationship between a client and an attorney (and the attorney's firm) is such that all attorneys at a firm must be presumed to be in a "position of trust" with respect to the firm's clients. *Cf. United States v. Polland,* 994 F.2d 1262, 1270 (7th Cir.1993) (holding that attorney-client relationship can place attorney in position of trust for purposes of section 3B1.3).

### D.

■ Appellant's last argument is that the government violated its pledge not to introduce evidence concerning the acquisition of the birth certificate. Appellant essentially presses an estoppel theory, by which he contends that if the government used evidence that it had promised not to introduce, his conviction cannot stand. We need not decide the merits of appellant's theory, however, because the government did not violate its pledge. The government carefully qualified its concession and promised only that it would not "prove either the conduct of *unlawfully* procuring the birth certificate from the vital records office with intent to defraud the United States *at that time,* or of unlawfully possessing it with such intent at the passport office, *as an essential element of the offenses charged in the second indictment.*" *White I,* 936 F.2d at 1330 n. 2 (emphasis added). The government, of course, tailored its concession to its understanding of what the now overruled *Grady* decision required. It is true that in *White I* we said that we would not decide whether (or to what extent) *Grady* would prohibit reproof of the conduct surrounding the acquisition of the birth certificate "because the government has conceded ... that it may not reprove the conduct involving the birth certificate offense," *id.* at 1330, and that statement could be read

to reflect a broad understanding of the concession. Still, our description of the government's promise was ambiguous at best and was not intended to provide a definitive interpretation for the government to follow. The government proceeded in good faith on its own narrower understanding of the concession, an understanding that it maintained consistently before the district court. The district judge even approved the government's position outlining how it intended to implement the concession. There was, therefore, no violation of the promise in this case.

\*     \*     \*     \*     \*     \*

For the foregoing reasons, appellant's convictions and sentence are affirmed.

*So ordered.*