UNITED STATES of America, Appellee,

v.

Vernon A. MONTAGUE, Appellant.

No. 93–3191.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 20, 1994.

Decided Nov. 18, 1994.

As Amended Dec. 20, 1994.

Ethan M. Posner, appointed by the Court, Washington, DC, argued the cause for appellant. With him on the briefs was Bruce A. Baird, Washington, DC.

Miriam M. Smolen, Asst. U.S. Atty., Washington, DC, argued the cause for appellee. With her on the brief were Eric H. Holder, Jr., U.S. Atty., and John R. Fisher, Asst. U.S. Atty., Washington, DC.

Before: EDWARDS, Chief Judge, GINSBURG and SENTELLE, Circuit Judges.

Opinion for the Court filed by Chief Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Chief Judge:

Appellant, Vernon Montague, was tried before a jury and convicted of possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d) (1988) and aiding and abetting the possession of an unregistered firearm in violation of 18 U.S.C. § 2 (1988). During trial, appellant testified that he neither owned nor possessed the gun that was retrieved from a car in which he was a passenger on the night

of his arrest. Montague's story contradicted the testimony of an arresting officer, who claimed that the gun was leaning against appellant's left leg and within the touch of his left hand.

At sentencing, the prosecution sought a two-level enhancement on the ground that Montague had given perjured testimony. The trial judge granted this request, finding by a preponderance of the evidence that appellant had testified falsely at trial. The United States Sentencing Guidelines ("Guidelines") mandate that, in applying the perjury enhancement, judges should evaluate the defendant's testimony "in a light most favorable to the defendant." U.S.S.G. § 3C1.1 application note 1. Because the Guidelines require a higher standard of proof than a preponderance of the evidence, we vacate appellant's sentence enhancement and remand the case to allow the trial judge to reconsider.

## I. Background

On January 5, 1993, Metropolitan police officers approached a parked car in which Appellant Vernon Montague and his half brother Vernon Armstead were sitting. During the ensuing conversation between the officers and Armstead, one officer moved around toward the passenger side of Armstead's car, and discovered a shotgun in the car. The officers arrested both Montague and Armstead for possession of an unregistered firearm. Armstead pleaded guilty to this offense. Montague, however, went to trial. At trial, Officer McGee (one of the arresting officers) and Montague presented conflicting testimony as to whether Montague had his hand on the shotgun, a fact probative of constructive possession.

Officer McGee testified that he observed Montague sitting in the passenger seat and that he saw a gun leaning against appellant's left leg, with appellant's left hand resting on the gun. Officer McGee said that, upon seeing the gun, he opened the car door, warned the other officers that appellant had a gun, and then grabbed appellant and put him on the ground. Another one of the arresting policemen, Officer Garrett, retrieved the shotgun from the car.

The appellant presented a different story. He testified that, on the night in question, he and his brother went out to purchase drugs for their personal use, and Armstead brought along a gun. Appellant claimed to have nothing to do with the gun, although he apparently was aware that his brother wedged the gun, out of view, between the two front seats. Montague testified that the gun never rested between his legs and that he never rested his hand on the weapon. Montague also testified that, when the police first confronted him, Officer McGee opened the passenger-side door and told him to step out of the car. Montague said that Officer McGee did not search the car and find the gun until after appellant had been "patted down" outside the vehicle; then, according to appellant, Officer McGee warned the other officers about the gun and arrested Montague.

At the close of trial, on July 29, 1993, the jury found Montague guilty of possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d) (1988) and aiding and abetting in violation of 18 U.S.C. § 2 (1988). Three months later, at his sentencing hearing, the Government requested a two-level enhancement for perjurious testimony under section 3C1.1 of the Guidelines. The defense counsel objected to the enhancement on the ground that the testimony given by Officer McGee and Montague was sufficiently close that one could not say with firm conviction that appellant had perjured himself.

The District Court Judge independently evaluated the evidence under a preponderance-of-the-evidence standard and found appellant's testimony to be false. The District Court enhanced appellant's sentence, adding two points to the offense level for perjury. Appellant now challenges the sentence enhancement.

## II. Discussion

### A. Standard of Review

In reviewing challenges to a district court's application of the Guidelines, we have observed that "Congress crafted a trichotomy: purely legal questions are reviewed de novo; factual findings are to be affirmed unless

'clearly erroneous'; and we are to give 'due deference' to the district court's application of the guidelines to the facts." *United States v. Kim,* 23 F.3d 513, 517 (D.C.Cir.1994). In this case, we face a legal question, *i.e.,* the standard of proof to be used by the trial court in evaluating a defendant's testimony on an application for a perjury enhancement under the Sentencing Guidelines.

### B. *Sentencing Guidelines*

■ Section 3C1.1 of the Guidelines directs district court judges to increase the offense level by two if

the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense.... 

U.S.S.G. § 3C1.1. The Application Notes to this section provide a nonexhaustive list of the types of conduct that warrant an enhancement for obstruction of justice, including "committing, suborning, or attempting to suborn perjury." U.S.S.G. § 3C1.1 application note 3(b). The Application Notes also caution district court judges regarding their evaluation of a defendant's testimony:

This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury) ... is not a basis for application of this provision. In applying this provision in respect to alleged false testimony or statements by the defendant, such testimony or statements should be evaluated in a light most favorable to the defendant.

U.S.S.G. § 3C1.1 application note 1.

In this case, we must decide the applicable standard of proof under section 3C1.1, giving due weight to the Application Note directing trial judges to evaluate the testimony "in a light most favorable to the defendant." In our view, the enunciated standard exceeds a "preponderance of the evidence." The exact standard intended by the Sentencing Commission is difficult to discern, but we think that it is something akin to "clear-and-convincing" evidence.

### C. *Preponderance-of-the-Evidence Standard*

The Government contends that the District Court properly used the preponderance-of-the-evidence standard of proof in assessing Montague's testimony. Courts have long used the preponderance-of-the-evidence standard for sentencing decisions on the theory that decisions made at the sentencing stage do not as deeply implicate defendants' rights as do decisions made regarding guilt or innocence. *See McMillan v. Pennsylvania,* 477 U.S. 79, 91–92, 106 S.Ct. 2411, 2418–19, 91 L.Ed.2d 67 (1985) (finding sentencing courts' use of a preponderance standard satisfies due process); *see also* U.S.S.G. § 6A1.3 commentary (incorporating the use of the preponderance-of-the-evidence standard in sentencing determinations). Appellant does not dispute that the preponderance-of-the-evidence standard usually applies to sentencing determinations, but argues that the District Court should have used a higher standard in evaluating appellant's testimony.

We recently had occasion to determine what kind of perjury constitutes obstruction of justice and, in so doing, commented on the standard of proof district courts should use in evaluating defendant testimony. Another panel of the court found that "[t]he admonition in Application Note 1 to evaluate the defendant's testimony 'in a light most favorable to the defendant' apparently raises the standard of proof—above the 'preponderance of the evidence' standard that applies to most other sentencing determinations." *United States v. Thompson,* 962 F.2d 1069, 1071 (D.C.Cir.1992), *cert. denied,* —— U.S. —— ——, 113 S.Ct. 1418–19, 122 L.Ed.2d 788 (1993). We share this view. We have never seen the preponderance-of-the-evidence standard defined along the lines indicated in Application Note 1 to Guidelines section 3C1.1. And we cannot imagine why the Sentencing Commission would have written the Application Note as it did had it intended nothing more than the usual standard of proof. The preponderance-of-the-evidence standard generally puts evidence on an evenly balanced scale. *See* McCormick on Evidence § 339 (John W. Strong ed., 4th ed. 1992) (suggesting that proof by a preponderance means the

greater weight of the evidence); Jones on Evidence: Civil and Criminal § 3:9 (Clifford S. Fishman ed., 7th ed. 1992). Viewing the evidence "in a light most favorable to the defendant," however, means putting a thumb on the scale, or resolving all doubts, in favor of the defendant. *See Herman & MacLean v. Huddleston,* 459 U.S. 375, 390, 103 S.Ct. 683, 691, 74 L.Ed.2d 548 (1982) (stating that a "preponderance-of-the-evidence standard allows both parties to 'share the risk of error in roughly equal fashion,'" whereas other standards express a preference for one side's interests (quoting *Addington v. Texas,* 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979))).

We must assume that, in writing the Application Note to section 3C1.1, the Sentencing Commission intended to create an exception to the usual practice of employing the preponderance-of-the-evidence standard in sentencing decisions. It is particularly noteworthy that Application Note 1 singles out *defendant testimony;* it directs courts to use this standard only "in respect to alleged false testimony or statements by the defendant." U.S.S.G. § 3C1 application note 1. This may reflect a legitimate concern on the part of the Commission: in the absence of a heightened standard of proof on perjury, defendants might be leery about testifying in their own defense lest they face a charge of perjury whenever convicted.[1] Whatever the explanation, there is little doubt that section 3C1.1 and the Application Note, taken together, express a standard of proof greater than a preponderance of the evidence.

#### D. *Clear–and–Convincing Standard*

We hold that the clear-and-convincing standard is the appropriate standard by which to evaluate defendant testimony for section 3C1.1 perjury enhancements. The Second Circuit recently confronted this issue and found the Application Note to "instruct[ ] the sentencing judge to resolve in favor of the defendant those conflicts about which the judge, after weighing the evidence, has no firm conviction." *United States v. Onumonu,* 999 F.2d 43, 45 (2d Cir.1993) (internal quotations omitted). In assessing section 3C1.1, the Second Circuit reasoned, as we did in *Thompson,* that "this standard is obviously different—and more favorable to the defendant—than the preponderance-of-evidence standard." *Id.* (internal quotations omitted). It went on to find that this standard "sounds to [it] indistinguishable from a clear-and-convincing standard." *Id.* We agree.

■ Reflecting on the practical application of these standards in assessing conflicting testimony underscores our conclusion that the Sentencing Commission meant for judges to use the clear-and-convincing standard of proof in perjury enhancements. Often, under a preponderance-of-the-evidence standard, it is assumed that the trier of fact piles up the evidence arguably on the plaintiff's side and the evidence arguably on the defendant's side and determines which pile is greater. *Cf. In re Winship,* 397 U.S. 358, 367–68, 90 S.Ct. 1068, 1074, 25 L.Ed.2d 368 (1969) (noting "the accuracy of the observation of commentators that 'the preponderance test is susceptible to the misinterpretation that it calls on the trier of fact merely to perform an abstract weighing of the evidence in order to determine which side has produced the greater quantum, without regard to its effect in convincing his mind of the truth of the proposition asserted'" (quoting Norman Dorsen & Daniel A. Rezneck, *In Re Gault and the Future of Juvenile Law,* Fam. L.Q., Dec. 1967, at 1, 26–27)). In fact, a

---

1. The Sentencing Commission itself states in the first sentence of its application note, "[t]his provision is not intended to punish a defendant for the exercise of a constitutional right." U.S.S.G. § 3C1.1 application note 1. We assume that the Commission refers to the right to testify on one's own behalf. While we recognize that there is no right to perjury, the Supreme Court has nevertheless found the right to testify implicit in the Constitution. *United States v. Dunnigan,* —— U.S. ——, ——, 113 S.Ct. 1111, 1117, 122 L.Ed.2d 445 (1993) (citing *Rock v. Arkansas,* 483

U.S. 44, 51–53, 107 S.Ct. 2704, 2709, 97 L.Ed.2d 37 (1987); *Nix v. Whiteside,* 475 U.S. 157, 164, 106 S.Ct. 988, 992–93, 89 L.Ed.2d 123 (1986)). The Commission likely sought to protect this constitutional right with a higher standard. As Justice Stewart once observed, there may be an inhibiting effect on a defendant's right to testify attributable to "a defendant's rational fear that his truthful testimony will be perceived as false." *United States v. Grayson,* 438 U.S. 41, 57, 98 S.Ct. 2610, 2619, 57 L.Ed.2d 582 (1978) (Stewart, J., dissenting).

more accurate notion of the preponderance-of-the-evidence standard is "evidence which as a whole shows that the fact sought to be proved is more probable than not."[2] BLACK'S LAW DICTIONARY 1182 (6th ed. 1990). By contrast, the clear-and-convincing standard generally requires the trier of fact, in viewing each party's pile of evidence, to reach a firm conviction of the truth on the evidence about which he or she is certain. *See, e.g., id.* at 251 (defining clear-and-convincing proof as "proof which results in reasonable certainty of truth"); (CLIFFORD S. FISHMAN, JONES ON EVIDENCE: CIVIL AND CRIMINAL § 3:10 (7th ed. 1992) (defining clear-and-convincing evidence as that which must produce in mind of fact finder a "firm belief or conviction" that the allegations are true) (internal quotations omitted). While we find no perfect analogue among our traditional standards of proof to the process called for by the sentencing guidelines, we find the clear-and-convincing standard most akin to the process of evaluating testimony "in a light most favorable to the defendant;" the fact finder must recognize the evidence with respect to which he or she is uncertain, and put that evidence in the defendant's pile. This does not mean to suggest that a fact finder must view all of the pieces of evidence in isolation of each other, but does mean to emphasize that the fact finder give the benefit of the doubt to the defendant. Thus, under the clear-and-convincing standard, the judge would view the evidence as the Guidelines require, "in a light most favorable to the defendant," and find perjury only on evidence with respect to which the judge is clearly convinced.

The Supreme Court's recent decision in *United States v. Dunnigan,* —— U.S. ——, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), also supports our conclusion.[3] In that case, the Court held that the sentencing court must make "independent findings" necessary to establish an obstruction of justice. *Id.* at ——, 113 S.Ct. at 1117. The Court reasoned that there may be many instances in which an accused testifies at trial and is convicted but may not incur a perjury enhancement, stating,

> an accused may give inaccurate testimony due to confusion, mistake or faulty memory. In other instances, an accused may testify to matters such as lack of capacity, insanity, duress or self-defense. Her testimony may be truthful, but the jury may nonetheless find the testimony insufficient to excuse criminal liability or prove lack of intent.

*Id.* The Court concluded that "a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition." *Id.* By "independent findings," the Court meant that "it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding." *Id.* The Court's reasoning, that there may be instances in which a testifying defendant is found guilty but did not commit perjury, and the Court's conclusion, that a judge must make independent factual findings, comports with our reading of the standard of proof under Application Note 1 to section 3C1.1. Requiring independent

---

2. The word "preponderance" means something more than "weight"; it denotes a superiority of weight, or outweighing. The words are not synonymous, but substantially different. There is generally a "weight" of evidence on each side in case [sic] of contested facts. But juries cannot properly act upon the weight of evidence, in favor of the one having the *onus,* unless it overbear, in some degree, the weight upon the other side.
BLACK'S LAW DICTIONARY 1182 (6th ed. 1990).

3. Although another panel of this court has found that it was not clearly erroneous for a district

court judge to conclude by a preponderance of the evidence that the defendant committed perjury after the jury found him guilty beyond a reasonable doubt, *United States v. White,* 1 F.3d 13, 18 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1053, 127 L.Ed.2d 374 (1994), the decision in that case does not dispose of the question raised here. First, the issue of the correct standard of proof was not before the court in *White.* Second, the panel decision in *White* does not take account of *Dunnigan,* which, as we note in the text, has a bearing on the assessment of the standard of proof under section 3C1.1.

findings and preferring separate and clear findings seems to go hand-in-hand with a higher standard of proof. They both ensure that perjury enhancements will be "far from automatic." *Id.* at ——, 113 S.Ct. at 1118.

■ In short, we hold that when a district court judge makes a finding of perjury under section 3C1.1, he or she must make independent findings based on clear and convincing evidence. The nature of the findings necessarily depends on the nature of the case. Easy cases, in which the evidence of perjury is weighty and indisputable, may require less in the way of factual findings, whereas close cases may require more. In this case, a judge might consider Montague's testimony and that of Officer McGee fairly close; but slight divergences have major consequences. In cases such as this, it is crucial that the judge be clear as to his or her findings and give the benefit of the doubt to the defendant when the judge has no firm conviction.[4] Simply put, cases that cause a district court pause require separate and clear findings and careful attention to the evaluating standard in supporting the determination.

### E. *Postscript*

Although we have been able to render judgment in this case, we have been uneasy over our task. No doubt, other judges in the federal courts have shared our uneasiness. We think it time that the Sentencing Commission reconsider and rewrite its application notes to section 3C1.1 so that they are intelligible to all circuits.

To us, the Sentencing Commission's language, "in a light most favorable to the defendant," means something more than a preponderance of the evidence. While we believe the standard of proof most closely resembles a clear-and-convincing standard, we are not certain how high a standard the Sentencing Commission meant to set. Sister circuits are likewise confused. Some circuit opinions apply a standard resembling the preponderance-of-the-evidence standard to defendant testimony. *See United States v. Rojo–Alvarez,* 944 F.2d 959, 969 (1st Cir. 1991) (finding that the cautionary note "simply instructs the sentencing judge to resolve in favor of the defendant those conflicts about which the judge, after weighing the evidence, has no firm conviction") (internal quotations omitted); *United States v. Barbarosa,* 906 F.2d 1366, 1370 (9th Cir.), *cert. denied,* 498 U.S. 961, 111 S.Ct. 394, 112 L.Ed.2d 403 (1990) (same); *United States v. Franco–Torres,* 869 F.2d 797, 801 (5th Cir. 1989) (same). Other circuit opinions apply a clear-and-convincing standard. *See, e.g., United States v. Onumonu,* 999 F.2d 43, 45 (2d Cir.1993) (finding the standard of proof for perjury enhancements "indistinguishable from a clear-and-convincing standard"). One circuit applies a "no-reasonable-fact-finder" standard. *See United States v. Willis,* 940 F.2d 1136, 1140 (8th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 1411, 122 L.Ed.2d 782 (1993) (finding "[n]o enhancement should be imposed based on the defendant's testimony if a reasonable trier of fact could find the testimony true"). Still other opinions apply standards that are not neatly

---

4. Implicit in the Government's argument is the suggestion that in order to find the defendant guilty of possession of an unregistered firearm, the jury had to find appellant's testimony false. That assumption is wrong. This case was about constructive possession. The jury could have believed Montague's testimony regarding the placement of the gun and nevertheless found him guilty of constructive possession. That is not to say that the placement of the gun or of Montague's hand in relation to the gun did not help the Government's case; undoubtedly, these facts advanced the Government's position. But the Government could have won a conviction without these facts, especially after Montague testified that he had knowledge of the gun, and that the gun was in between the two front seats, within his reach.

This is not a case like *Thompson,* in which the court found that "[w]hen the jury has answered the first question by finding beyond a reasonable doubt that the defendant lied, and could not have convicted otherwise, it might be anomalous for the judge to sentence the defendant upon the basis of the jury verdict and yet refuse to enhance the sentence for perjury merely because the judge entertains a doubt that the defendant lied." *Thompson,* 962 F.2d at 1071–72. In contrast, the jury in this case did not need to decide whether appellant testified falsely in order to find him guilty of constructive possession. The facts in this case underscore the necessity of *Dunnigan's* requirement that trial court judges make findings independent of the jury's verdict before enhancing a sentence for perjury.

categorized. *See, e.g., United States v. Akitoye,* 923 F.2d 221, 228 (1st Cir.1991) (finding the note suggests that "if perjury is less than apparent on the record as a whole ... the defendant should be given the benefit of the resultant doubt"). Such disparate treatment of perjury enhancements should prompt the Sentencing Commission to rewrite Application Note 1 to section 3C1.1. Uniformity of sentencing throughout the country, after all, was one of the driving purposes behind the Guidelines.

### III. CONCLUSION

For the foregoing reasons, we vacate the sentence enhancement and remand to the District Court to evaluate appellant's testimony consistent with this opinion.

*So ordered.*