UNITED STATES of America, Appellee,

v.

Dennis SOBIN, Appellant.

No. 93–3144.

United States Court of Appeals, District of Columbia Circuit.

Argued April 6, 1995.

Decided June 16, 1995.

Allen E. Burns, Asst. Federal Public Defender, Washington, DC, argued the cause for the appellant. On brief was A.J. Kramer, Federal Public Defender, Washington, DC.

Preston Burton, Asst. U.S. Atty., Washington, DC, argued the cause for the appellee. On brief were Eric H. Holder, Jr., U.S. Atty., and John R. Fisher, Richard W. Roberts and Elizabeth Trosman, Asst. U.S. Attys., Washington, DC.

Before: BUCKLEY, HENDERSON and TATEL, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

Circuit Judge TATEL concurs in the judgment.

KAREN LeCRAFT HENDERSON, Circuit Judge:

> The law's made to take care o' raskills.
>
> George Eliot
>
> *Mill on the Floss*, Bk. III, ch. 4.

Appellant Dennis Sobin was convicted on six counts of bankruptcy fraud and related crimes. He was sentenced to six concurrent prison terms of sixty to sixty-five months, all to run consecutively to seven concurrent twelve-year Florida state court sentences, and was fined $360,000. Sobin appeals his convictions on the grounds that the district court erroneously denied his motion to suppress pre-*Miranda* admissions, improperly admitted expert testimony on the bankruptcy process and incorrectly charged the jury on the meaning of the phrase "false statement" as used in 18 U.S.C. § 152(3). In addition, Sobin appeals his sentences on the grounds that the district court erred in enhancing his offense level by four levels under section 3B1.1(a) of the United States Sentencing Guidelines (Guidelines) (for leading or organizing an "extensive" criminal activity) and by two levels under section 3C1.1 of the Guidelines (for obstruction of justice), increasing his criminal history to reflect Flori-

da state court convictions based on his bankruptcy fraud, causing his federal sentences to run consecutively to (rather than concurrently with) the Florida sentences, and imposing an excessive fine beyond his ability to pay. For the reasons set out below, we reject each of Sobin's challenges and affirm his convictions and sentences.

On appeal from a conviction, we must view the evidence in the light most favorable to the government, allowing it the benefit of all reasonable inferences that may be drawn from the evidence and permitting the jury to determine the weight and credibility of the evidence. *United States v. Smith,* 964 F.2d 1221, 1222 (D.C.Cir.1992); *United States v. Butler,* 924 F.2d 1124, 1126 (D.C.Cir.), *cert. denied,* 502 U.S. 871, 112 S.Ct. 205, 116 L.Ed.2d 164 (1991). So viewed the evidence reveals the following facts.

In 1985 Sobin, with the assistance of Brad Woodward, applied to C & P Telephone Company (C & P) for a "976" telephone line to be operated by INGSOC, a corporation controlled by Sobin. Revenues from the line were divided evenly between INGSOC and C & P. The following year Woodward applied for two more 976 lines at Sobin's behest, this time on behalf of the "Bruce Corporation" (Bruce). The first application listed Bruce's corporate address as a Washington, D.C. post office box rented to Sobin and was accompanied by a $1,250 application fee drawn on a Bruce bank account Sobin had opened in New York State and signed by Sobin. The second application also identified the same post office box mailing address. The first of the phone lines recited children's stories and was eventually discontinued. The second was an adult party line that proved very profitable, yielding revenues for Bruce of over $912,000 in less than two years. Sobin engaged Jackie Tessmer, one of his employees, to manage the party line's day-to-day operation.

In early 1987 Sobin set in motion a scheme to conceal Bruce's 976 revenues from the bankruptcy court. He first contacted a New York lawyer to incorporate Bruce in that state and then opened a number of new bank accounts for Bruce. He opened the first new account in March 1987 at First American Bank in Virginia with a $57,988.12 check C & P had sent Bruce at his Washington, D.C. post office box; the signatories were identified as Mary Ann Evans and Dennis P. Kasobin, both aliases used by Sobin, and the same post office box was given as the mailing address. Later that month he opened another account, at Sovran Bank, listing as Bruce's address a different post office box, also rented in his name and located in Washington, D.C., and identifying Philip Kasobin as director and authorized signatory. The signature card was later amended to add Mary Ann Evans and Esther Pohorylo, his longtime girlfriend's mother, as authorized signatories. Substantial checks from C & P were deposited into this account. On April 23, 1987 Sobin opened a third account, at Dominion Bank, identifying Philip Kasobin and Mary Ann Evans as signatories and directors and again listing his second Washington, D.C. post office box as the corporate address. On May 2, 1987 Sobin opened a fourth new account at Long Island Savings Bank in New York, identifying himself as director and using the second post office box as Bruce's address.

On May 1, 1987, the day before he opened the fourth account, Sobin filed a voluntary chapter 11 petition for personal bankruptcy with the United States Bankruptcy Court for the District of Columbia. On May 13, he filed with the bankruptcy court a sworn "Statement of Financial Affairs" (Financial Statement), dated May 4, 1987, that made no mention of his use of aliases, of the Bruce bank accounts or of any beneficial interest in Bruce, although the form specifically requested such information. *See* Gov't Exh. 1.[1]

---

1. The Financial Statement form asked the following relevant questions:

Have you used or been known by any other names within the six years immediately preceding the filing of the original petition herein? (If so, give the particulars.)

Have you been in any partnership with anyone, or engaged in any business during the six years immediately preceding the filing of the original petition here? (If so, give particulars, including names, dates and places.)
What accounts or certificates of deposit or shares in banks, savings and loan, thrift, build-

Some time later C & P, having learned of Sobin's bankruptcy filing and believing him to be a principal of Bruce, stopped all 976 payments to the company. In an attempt to obtain release of payments due, Sobin took a number of steps to distance himself from Bruce and the 976 lines. First, he appointed Tessmer "president" of Bruce and instructed her to open a new corporate account at Sovran Bank, with herself and Mary Ann Evans as signatories and the second of Sobin's Washington, D.C. post office boxes as the mailing address. He also directed Paulette Barrier, who performed payroll work for Sobin out of a Maryland health spa he was renting, to open another Bruce account at Citizens Bank of Maryland using the spa's mailing address. He then arranged for Tessmer to sell the 976 lines to Anthony Parker, a lawyer, with 90% of the purchase price to be paid as a "management fee" to Goldman Telecommunications, another corporation controlled by Sobin. He also induced Tessmer to disavow any connection between him and Bruce, in affidavits, depositions and a letter to the United States Attorney, and to identify Esther Pohorylo as Bruce's owner. Finally, Sobin himself, when deposed during the bankruptcy proceeding, denied any knowledge of or connection with Bruce.

Ultimately Bruce and Sobin's bankruptcy trustee negotiated a settlement under which the trustee received $22,000 out of approximately $200,000 in 976 revenues withheld by C & P while the remainder was paid to Bruce. Barrier deposited Bruce's payments in the Citizens Bank account in Maryland from which they later disappeared, at least $100,000 making its way to a brokerage investment account controlled by Sobin.

On May 19, 1992, Sobin surrendered to FBI Special Agent John C. Cotter who, before advising him of his *Miranda* rights, asked Sobin for certain information to complete a standard fingerprint card. Among the questions he asked was whether Sobin used any aliases. Sobin responded that he had used three: Dennis Kasobin, Philip Sullivan and Mary Ann Evans.[2]

Based on Sobin's scheme to divert Bruce profits from the bankruptcy court's jurisdiction, Sobin was indicted on six counts: conspiring to commit bankruptcy fraud, in violation of 18 U.S.C. § 371 (Count 1); committing bankruptcy fraud, in violation of 18 U.S.C. § 152 (Counts 2 & 3); and interstate transportation of money obtained through bankruptcy fraud, in violation of 18 U.S.C. §§ 2314 & 2 (Counts 4–6).[3] The morning Sobin's trial was to begin his lawyer moved to suppress his alias admission to Cotter on the ground it was not preceded by *Miranda* warnings. The government opposed the motion both as untimely and on the merits. The district court took the motion under advisement and on the third day of trial denied it on both grounds.

On March 11, 1993, after a lengthy trial, a jury convicted Sobin of all six counts. On July 15, 1993 the district court sentenced Sobin to sixty months' imprisonment on each of counts 1 to 3 and sixty-five months on each of counts 4 to 6 (to run concurrently with each other but consecutively to his seven concurrent twelve-month Florida state sentences) and three years of supervised release, fined him $360,000, assessed $32,000 in restitution and imposed a special assessment of $300. Sobin raises several challenges to the convictions and the sentences, which we address seriatim.

ing and loan and homestead associations, credit unions, brokerage houses, pension funds and the like have you maintained alone or together with any other person and in your own or any other name within the two years immediately preceding the filing of the original petition herein? (Give the name and address of each institution, the name and number under which the account or certificate is maintained, and the name and address of every other person authorized to make withdrawals from such account.)
Gov't Exh. 1 at 1, 2.

2. The record does not reveal whether Sobin also disclosed (or Agent Cotter was aware) that Mary Ann Evans had an alias of her own.

3. The two counts of bankruptcy fraud were based on the filing of the false Financial Statement and the false deposition testimony, while the last three counts were based on the transportation of three C & P checks from the District of Columbia to Maryland for deposit in the Citizens Bank account.

## The Convictions

We first address Sobin's three arguments for reversal of his convictions and reject each in turn.

 First, Sobin asserts the district court erred in denying his motion to suppress the pre-*Miranda* admission that he had used the aliases Philip Kasobin, Philip Sullivan and Mary Ann Evans. We conclude that Sobin waived his right to seek suppression by waiting until the morning of trial to assert it. Rule 12(b)(3) of the Federal Rules of Criminal Procedure provides that motions to suppress evidence "must be raised prior to trial." Rule 12(f) further provides that "[f]ailure by a party to raise defenses ... which must be made prior to trial, at the time set by the court pursuant to subdivision (c), or prior to any extension thereof made by the court, shall constitute waiver thereof," although "the court for cause shown may grant relief from the waiver." Sobin does not dispute that he waited until after the district court's motion deadline, in fact until the very day of trial, to move to suppress.[4] Nor do we think the district court clearly erred by concluding that Sobin had not proven "cause" sufficient to justify relieving him of the consequences of his untimely motion.[5] *See United States v. Mitchell*, 951 F.2d 1291, 1297 (D.C.Cir.1991), *cert. denied*, 504 U.S. 924, 112 S.Ct. 1976, 118 L.Ed.2d 576 (1992). Accordingly, the district court's denial of the motion as untimely must be upheld. *See United States v. Mangieri*, 694 F.2d 1270, 1282–83 (D.C.Cir.1982) (affirming district court's refusal to permit filing of motion to suppress on morning of trial); *United States v. Torres*, 908 F.2d 1417, 1424 (9th Cir.) (affirming denial of suppression motion filed after judge's motion deadline), *cert. denied*, 498 U.S. 948, 111 S.Ct. 366, 112 L.Ed.2d 329 (1990).[6]

 Next, Sobin challenges the admission of expert testimony by Dennis Early, an assistant United States trustee.[7] Expert testimony is generally admissible if it " 'assist[s] the trier of fact to understand the evidence or to determine a fact in issue' " and does "not extend to matters within the knowledge of laymen." *United States v. Boney*, 977 F.2d 624, 628 (D.C.Cir.1992) (quoting Fed. R.Evid. 702). Early's testimony helped the jurors understand what information a bankruptcy trustee expects in response to the questions contained in the Financial Statement and why that information is important, matters not within most jurors' experience. Sobin argues that "the only conclusion [the jurors] could have reached consistent with Early's ostensibly authoritative opinions was that Sobin was guilty of Bankruptcy fraud." Appellant's Brief at 31–32. We disagree. The crucial disputed issues at trial were factual ones, namely whether Sobin used aliases or had financial interests not revealed in the Financial Statement and whether he intentionally concealed that information. Early's testimony never touched on those issues. Most important, Early did not testify to "the ultimate question of guilt or innocence" on which an expert is forbidden to offer an

---

4. Sobin argues only that the district court's denial on the merits somehow negated her simultaneous denial on the alternate ground of untimeliness. He offers no authority for his contention and we reject it summarily.

5. Defense counsel received a summary of the Cotter interview eight months before trial. Sobin's assertion that counsel "overlooked the significance of the statements," Reply Brief of Appellant at 2–3, does not warrant reversing the district court's decision. *See United States v. Mangieri*, 694 F.2d 1270, 1282–83 (D.C.Cir.1982) (declining to reverse finding of waiver where "appellant had over three months between indictment and trial to examine the government's investigative file and to inquire, favorably or unfavorably, into how its investigators had gathered evidence").

6. Sobin also argues the district court erroneously prevented defense counsel from eliciting testimony about the circumstances of the admission, including the absence of *Miranda* warnings, to establish whether it was voluntary. In fact, however, the court advised counsel she was free to elicit such testimony so long as she limited her questions to the booking process during which Sobin made the challenged admission. Trial Tr. vol. 4 at 52. Even if the court erred in limiting the scope of cross-examination, the evidence establishing the aliases was so overwhelming that any error was harmless.

7. An assistant United States trustee assists the regional United States Trustee in supervising bankruptcy cases. *See* 28 U.S.C. § 586; Trial Tr. vol. 9 at 15–16.

opinion. *Boney,* 977 F.2d at 630. Accordingly, we conclude admission of his testimony was not an abuse of discretion warranting reversal. *See id.* at 629.

■ Sobin next challenges the following portion of the district court's instruction on "false statement":

> The term false statement can also mean any knowing omission of fact made with intent to deceive or to conceal.
>
> In such regard, a person who files for bankruptcy has an affirmative duty to identify all assets and to answer all questions in any statement of financial affairs or depositions fully, completely and honestly.

Trial Tr. vol. 14 at 35–36. Sobin contends the instruction "suggested strongly and incorrectly that Sobin had not identified all his 'assets' and that he could not claim good faith omission of all of them." Appellant's Brief at 34. We perceive no such intimation. The quoted language correctly instructed the jurors that false statements are not limited to affirmative misrepresentations but include knowing omissions as well. *See United States v. Ellis,* 50 F.3d 419, 423–24 (7th Cir.1995); *United States v. Lindholm,* 24 F.3d 1078, 1085 (9th Cir.1994). Further, the district court expressly charged the jurors that the false statement or omission must be made with knowledge of its falsity and the intent to deceive or conceal, thereby precluding conviction based on a "good faith omission." *See* Tr. vol. 14 at 35. Accordingly, we find no error in the court's false statement instruction.

## The Sentencing

We next address and reject each of Sobin's challenges to his sentences.

■ Sobin first asserts the district court erred in enhancing his sentencing offense level by four levels under section 3B1.1(a) of the Guidelines. Section 3B1.1 provides:

> Based on the defendant's role in the offense, increase the offense level as follows:
>
> (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
>
> (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
>
> (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

U.S.S.G. § 3B1.1. Sobin argues the district court failed to make adequate factual findings to support a four-level enhancement under subsection (a) and should instead have enhanced the offense level by only two levels under subsection (c), as recommended in the Pre–Sentence Report (PSR). Because Sobin failed to object to the absence of such findings he has waived his right to challenge the enhancement on this ground and we are bound to uphold the district court's enhancement if supported by the record. *See United States v. Harley,* 990 F.2d 1340, 1341–42 (D.C.Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 236, 126 L.Ed.2d 190 (1993); *United States v. Mitchell,* 951 F.2d 1291, 1299 (D.C.Cir.1991), *cert. denied,* 504 U.S. 924, 112 S.Ct. 1976, 118 L.Ed.2d 576 (1992); *United States v. Caballero,* 936 F.2d 1292, 1296 (D.C.Cir.1991), *cert. denied,* 502 U.S. 1061, 112 S.Ct. 943, 117 L.Ed.2d 113 (1992). The government's evidence of Sobin's elaborate scheme to defraud the bankruptcy court, involving multiple bank accounts, aliases and transactions, amply supports the implicit finding that Sobin orchestrated an "extensive" criminal activity. We therefore affirm the four-level enhancement.

■ Next, Sobin challenges the district court's two-level enhancement for obstruction of justice under section 3C1.1 of the Guidelines. The court adopted the PSR's recommendation that Sobin's offense level be enhanced under section 3C1.1 because at his arraignment and bond hearing Sobin, while under oath, falsely identified the Alexandria, Virginia home of Esther Pohorylo, his girlfriend's mother, as his own residence for the preceding ten years. There can be little doubt that perjurious identification of a long-time fixed residence at a bond hearing is a material false declaration for which a section 3C1.1 enhancement is appropriate. *See*

U.S.S.G. § 3C1.1 application note 3(f) (including among section 3C1.1 misconduct "providing materially false information to a magistrate or judge"); *United States v. Smaw*, 993 F.2d 902, 904 (D.C.Cir.1992) (noting that the Guidelines commentary "defines as 'material,' any information 'that, if believed, would tend to influence or affect the issue under determination'") (quoting U.S.S.G. § 3C1.1 application note 5). Nevertheless, Sobin seeks reversal of the enhancement on the ground that the court failed to find by "clear and convincing evidence" that he had willfully perjured himself as required under this court's recent opinion in *United States v. Montague*, 40 F.3d 1251 (D.C.Cir.1994). We find this argument also unavailing. It is true that in *Montague* we adopted the "clear and convincing" standard for obstruction of justice enhancements based on perjury, but we also recognized that the kind of findings required may vary according to the circumstances:

> In short, we hold that when a district court judge makes a finding of perjury under section 3C1.1, he or she must make independent findings based on clear and convincing evidence. The nature of the findings necessarily depends on the nature of the case. Easy cases, in which the evidence of perjury is weighty and indisputable, may require less in the way of factual findings, whereas close cases may require more.... Simply put, cases that cause a district court pause require separate and clear findings and careful attention to the evaluating standard in supporting the determination.

*Id.* at 1256. This is not a "close" case that caused the district judge "pause." All the evidence indicates that Sobin never physically resided at the address he provided. Pohorylo herself told the probation officer that Sobin "has never lived there and will never be allowed to live there." PSR at 6.3. Further, the trial testimony of Pohorylo's daughter, who had lived with Sobin for many years,

and Sobin's own voter registration and bankruptcy petitions revealed various residences he used over the ten-year period, none of which corresponded to Pohorylo's home address. Based on this strong evidence, the district court found: "The probation office is absolutely correct, absolutely correct. Those two points remain. I don't even think any argument is necessary on that issue. Absolutely false statement to the court for the express purpose that it was designed." Sentencing Tr. at 38. Under the circumstances, we believe the court's emphatic language reflects its finding by clear and convincing evidence that Sobin provided material false information to the court so as to warrant a section 3C1.1 enhancement.

■ Next, Sobin asserts the district court erred in increasing his criminal history by three points because of his seven Florida state sentences and in making the federal sentences run consecutively to the Florida sentences.[8] Sobin reasons that because the conduct underlying the Florida convictions included his alleged bankruptcy fraud, the Florida sentences (1) were not "prior sentences" warranting an increase in his criminal history under Guidelines section 4A1.2, which requires that the prior sentences be "for conduct not part of the instant offense," and (2) "resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense," precluding consecutive sentencing under Guidelines section 5G1.3(b). Again we disagree. It is clear from the record that in the Florida prosecution Sobin received seven separate concurrent twelve-year sentences, only two of which encompassed acts for which he was prosecuted here. The remaining five sentences were for sexual offenses based on the videotaping of his girlfriend's children and were entirely unrelated to the federal prosecution.[9] Thus, although the district court made no explicit finding on the subject, we conclude that each of those five

---

**8.** On March 20, 1991 Sobin was convicted in Pasco, Florida of two counts of racketeering and five counts of sexual offenses involving the videotaping of minors. He was sentenced to seven concurrent twelve-year terms of imprisonment for those offenses on October 19, 1992.

**9.** In fact, the two overlapping Florida counts, for racketeering and conspiracy to commit racketeering, were based only in small part (1 of 72 predicate acts) on the bankruptcy fraud prosecuted here.

sentences was "for conduct not part of the instant offense" and that the criminal history increase should therefore be affirmed. *See United States v. Butler,* 966 F.2d 559, 563 (10th Cir.1992) (affirming criminal history increase for state court sentence although district court "did not make a finding as to whether the state offense involved conduct which was a part of the instant offense"); *cf. Williams v. United States,* 503 U.S. 193, 202–03, 112 S.Ct. 1112, 1120, 117 L.Ed.2d 341 (1992) (appellate court may affirm a sentencing departure based on improper factor if persuaded that "the departure is reasonable" and that "the district court would have imposed the same sentence absent the erroneous factor"). We likewise conclude that the five sexual offense sentences cannot be said to have "resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense," U.S.S.G. § 5G1.3(b), and that the six concurrent federal sentences must therefore "be imposed to run consecutively" to those sentences "to the extent necessary to achieve a reasonable incremental punishment for the instant offense[s]," *id.* § 5G1.3(c). Because the five sexual offense sentences did not result *at all* from conduct taken into account here, the district court properly imposed fully consecutive sentences as "reasonable incremental punishment" for the instant offenses.

◼ Finally, Sobin challenges the $360,-000 fine imposed by the district court, alleging that the government failed to prove his ability to pay it and that the district court's finding that he could do so is clearly erroneous. We reject this argument as well. In *United States v. Mastropierro,* 931 F.2d 905 (D.C.Cir.1991), we held that a sentencing judge need not make express findings regarding a defendant's ability to pay and that a fine will be upheld so long as the court considers financial capacity and its implicit finding of such ability is not clearly erroneous. *Id.* at 906–07. Consistent with this holding, in *United States v. Anderson,* 39 F.3d 331 (D.C.Cir.1994), *judgment vacated on other ground* (D.C.Cir. Feb. 9, 1995), we reversed and remanded a $1,000,000 fine where the judge's "implicit determination that [the defendant] had the ability to pay it

[was] at war with her explicit acknowledgment that he may not, and [was] therefore clearly erroneous," and nothing in the record "even remotely suggest[ed] that [the defendant] could ever pay a $1,000,000 fine." *Id.* at 357–58. Here the record reveals no conflicting findings and affirmatively supports Sobin's ability to pay a substantial fine. The evidence shows that Sobin received more than $900,000 from his 976 enterprise but does not show that he ever disposed of those funds. Further, the absence of evidence of his present financial condition is directly attributable to his diversion of funds and his refusal to provide any financial information or releases. Under the Guidelines, Sobin bears the burden of establishing inability to pay. *See* U.S.S.G. § 5E1.2(a); *United States v. Rafferty,* 911 F.2d 227, 232–33 (9th Cir. 1990). Having made no effort to carry his burden below, he cannot now argue that the fine is beyond his means to pay. *See id.* As we observed in *Anderson,* "it makes good sense to burden a defendant who has apparently concealed assets." Accordingly, we uphold the $360,000 fine.

For the preceding reasons, Sobin's convictions and sentences are

*Affirmed.*