**UNITED STATES of America,
Appellee,**

v.

**Hsin–Yung YEH, a/k/a Yeh
Hsin Yung, Appellant.**

**United States of America, Appellee,**

v.

**Jian Zhou Li, Appellant.**

**United States of America, Appellee,**

v.

**Yuan Dian Wang, Appellant.**

**Nos. 00–3092 to 00–3094.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 9, 2001.
Decided Jan. 29, 2002.

W. Gregg Spencer, Assistant Federal Public Defender, argued the cause for the appellants. A. J. Kramer, Federal Public Defender, and Joanne Vasco and Michael J. McCarthy, appointed by the court, were on brief.

Susan A. Nellor, Assistant United States Attorney, argued the cause for the appellee. Roscoe C. Howard Jr., United States Attorney, and John R. Fisher, Joseph B. Valder and Kenneth W. Cowgill, Assistant United States Attorneys, were on brief.

Before: HENDERSON and TATEL, Circuit Judges, and SILBERMAN, Senior Circuit Judge.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Appellants Hsin–Yung Yeh (Yeh), Yuan Dian Wang (Wang) and Jian Zhou Li (Li) seek vacatur of their sentences and remand to the district court for resentencing. In their joint brief, Yeh and Wang offer

one challenge each to their sentences and Li challenges his sentence on two grounds.

Yeh contends that the district court erred in applying to his sentence a four-level enhancement pursuant to section 3B1.1(a) of the United States Sentencing Guidelines (U.S.S.G. or Guidelines) as "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Wang asserts that the court erred in imposing a five-year mandatory minimum sentence of imprisonment under 8 U.S.C. § 1324(a)(2)(B)(ii) for attempting to "bring[ ] [three or more unauthorized] aliens" into the United States "for the purpose of commercial advantage or private financial gain." Li makes the same assertion as Wang and argues in addition that the district court improperly applied a two-level enhancement under U.S.S.G. § 2L1.1(b)(5) for "intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." Their contentions are without merit and we therefore affirm the sentences of all three.

### I.

On December 6, 1999 a United States Coast Guard aircraft sighted a freighter 400 miles south of Guatemala sailing towards the Guatemala–El Salavador coast.[1] The Coast Guard Cutter MUNRO was called to investigate the vessel, which had no apparent identification or markings. To no avail, the MUNRO tried to communicate with the freighter.

On December 7 the MUNRO launched an inflatable boat, the MUNRO 2, to approach the freighter and attempt communications once again. Upon questioning, Yeh and Wang—who were on the freighter's main deck—told Coast Guard Petty Officer Andrew Ha, the MUNRO's Chinese interpreter, that the vessel was named the Wing Fung Lung (WFL) and that it was headed toward Panama with a load of plywood and six crewmen aboard. When the Coast Guard asked to board the WFL, Yeh refused. During this exchange, boarding team members on the MUNRO 2 noticed numerous faces peering out of portholes beneath the WFL's main deck. Suspecting that Yeh and Wang were smuggling aliens, the MUNRO dropped back from the WFL to feign disinterest in the vessel's activities in order to see if the WFL's crew would permit the suspected aliens to appear on deck.

On December 9, lookouts aboard the MUNRO observed red flares over the WFL and scores of people frantically waving their arms on the WFL's deck. Recognizing the flares as an international signal of distress, the MUNRO launched both of its small boats with rescue and boarding teams. Once aboard the WFL, the teams determined that the vessel was flooding due to mechanical problems with the engines. The boarding team counted over two hundred aliens on the main deck. Coast Guard security officers identified certain crew members they believed to be shipboard "enforcers" and separated the fifteen to twenty enforcers from the aliens to keep them from inciting the aliens to violence. When the officers began handcuffing the enforcers, Yeh refused to comply with directions. He struggled with the officers and managed to seize a revolver from one of them. Yeh shot at Officer Robert Borowczak but missed. Yeh was then successfully restrained and handcuffed.

On deck, the Coast Guard found one life raft and only twenty life jackets, enough

---

1. The following factual account is drawn largely from Wang and Li's presentence re-

ports. *See generally* Sealed App. of Appellee, Tabs 1 and 2.

for the enforcers, but not the aliens, to escape the WFL in an emergency. Coast Guard engineers determined that the engines were inoperable and that the ship had to be towed to Guatemala. The Guatemalan authorities granted the Coast Guard permission to tow the WFL into port. During the tow, the Coast Guard provided the aliens with much-needed food and medical attention, after learning that they had been without food for over forty-eight hours and without water for over twenty-four hours. The WFL had only one small toilet area, which was reserved for females. Most of the aliens had been forced to relieve themselves in their sleeping areas. Rats and cockroaches infested the sleeping quarters and food lockers. The aliens were kept below deck during daylight hours and were only infrequently allowed on deck for a few hours at night. When questioned by the Coast Guard, they stated that their destination was the United States and that the cost of the trip was $40,000 per person. The fee was to be paid off or worked off upon arrival in the United States.

Appellant Yeh pleaded guilty to attempting to "bring[ ] [unauthorized] aliens" into the United States for financial gain, in violation of 8 U.S.C. § 1324(a)(2), to aiding and abetting the same, in violation of 18 U.S.C. § 2, and to assaulting a federal officer while armed, in violation of 18 U.S.C. § 111(a)(1), (b).

At Yeh's sentencing on September 14, 2000 the district court stated that it believed a four-level enhancement under U.S.S.G. § 3B1.1(a) was applicable. Wayne Justice, captain of the MUNRO, testified that Officer Borowczak led the MUNRO's boarding party and was given the task of determining who was in charge of the WFL. He stated that Borowczak observed Yeh giving orders to the aliens to start fires and jump ship. Borowczak himself testified that Yeh was indeed the shipboard leader and that the other enforcers did not make a move without Yeh's approval. Petty Officer Ha testified that Yeh volunteered the location of the WFL's documentation, knowledge that suggested Yeh's leadership role. Finally, at Wang's earlier sentencing, Wang had testified that Yeh sailed the ship and possessed one of the two satellite phones on the WFL. The district court concluded from the foregoing testimony that there was sufficient evidence to support a four-level enhancement under section 3B1.1(a) for Yeh's role as an "organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."

Appellant Wang pleaded guilty to attempting to "bring[ ] [unauthorized] aliens" into the United States for financial gain, in violation of 8 U.S.C. § 1324(a)(2), and to aiding and abetting the same, in violation of 18 U.S.C. § 2. With the aid of an interpreter, Wang stated that he had signed and understood the plea agreement and that he understood his possible prison term to be "not less than three years and up to ten years for the first two aliens" and "not less than five years and up to fifteen years for each of the third through the two hundred[th] aliens." App. of Appellants, Tab B, at 9.

At his sentencing on August 25, 2000 Wang testified that he had boarded the WFL as a passenger but that, as a fisherman, he was subsequently asked to pilot the WFL in exchange for a reduction in his $40,000 fee. Wang admitted that he knew that bringing unauthorized aliens into the United States was illegal and that by piloting the ship he was helping to get the WFL to its ultimate destination.

Although Wang had earlier acknowledged the court's obligation to impose a five-year minimum sentence on a defendant who transports three or more aliens

into the United States for financial gain, he protested that he had attempted to smuggle only himself. The district court concluded, however, that "legally" Wang was "helping with the enterprise" of bringing other unauthorized aliens. *Id.*, Tab C, at 37. The court therefore sentenced Wang to the five-year mandatory minimum sentence of imprisonment under 8 U.S.C. § 1324(a)(2)(B)(ii).

Appellant Li pleaded guilty to attempting to "bring[ ] [unauthorized] aliens" into the United States for financial gain, in violation of 8 U.S.C. § 1324(a)(2), and to aiding and abetting the same, in violation of 18 U.S.C. § 2. The district court determined that Li had signed and understood the plea agreement and that he understood his possible prison term to be "not less than three years and up to ten years for each of the first two aliens" and "not less than five years and up to fifteen years for each of the 3rd [through] the 200th alien[s]." App. of Appellee, Tab 2, at 11.

Li did not contest the government's assertions that he was one of the chief "enforcer[s] on the boat" and that he bore the responsibility "for keeping order, for keeping the aliens in their places[,] ... for distributing food and water to them ... [and for] permitt[ing] them to come up on top of the deck to get air and to exercise." *Id.*, Tab 2, at 18, 22. He also admitted that he performed these tasks "to save a couple of thousand dollars" of his $40,000 fare. App. of Appellants, Tab D, at 64.

The district court determined that by signing his plea agreement, Li (like Wang) had acknowledged that the court was obligated to impose a five-year minimum sentence because Li had aided and abetted in bringing three or more unauthorized aliens into the United States for financial gain. At Li's sentencing on August 29–30, 2000 the court also concluded that at Li's hands the aliens had endured "a filthy hold with terrible sanitation and inadequate food." *Id.*, Tab D, at 60. Because Li was responsible for "keeping order" among the aliens and for "distributing food and water to them," App. of Appellee, Tab 2, at 18, the district court added a two-level enhancement under U.S.S.G. § 2L1.1(b)(5) for "intentionally or recklessly creating a substantial risk of death or serious bodily injury" to them.

## II.

In reviewing the appellants' sentencing challenges, which we address seriatim, we "accept the findings of fact of the district court unless they are clearly erroneous" and "give due deference to the district court's application of the [G]uidelines to the facts." 18 U.S.C. § 3742(e); *see also United States v. McCoy*, 242 F.3d 399, 403–04 (D.C.Cir.), *cert. denied*, —— U.S. ——, 122 S.Ct. 166, 151 L.Ed.2d 114 (2001). We review issues of law *de novo*. *See McCoy*, 242 F.3d at 404; *United States v. Drew*, 200 F.3d 871, 876 (D.C.Cir. 2000).

On three grounds, Appellant Yeh challenges the district court's application of a four-level enhancement under U.S.S.G. § 3B1.1(a) for his actions as an "organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." All three of his arguments are without merit.

■ First, Yeh argues that "there was insufficient evidence of a fifth participant"—besides Yeh, Wang, Li and their co-defendant Lin Jian (who does not appeal here)—in the smuggling activity. Br. of Appellants at 7. This assertion has no support in the record, which instead indicates the involvement of at least five participants, if not more. Li testified at his (Li's) sentencing hearing that three men named Ton Wei Ki, "Little Japanese" and

Da Sa supervised Li in his capacity as an enforcer. Li stated that "it's no secret ... some of the most culpable persons were not indicted in this case," including Little Japanese. App. of Appellants, Tab D, at 28. He also told the district court that Little Japanese was in charge of security and ordered him to "help keep peace [in] the bottom of the boat." *Id.* As the government points out, this evidence is undisputed. At the very least, then, the district court did not clearly err in finding as a fact that there were five or more participants in the smuggling operation. Application Note 1 ·to section 3B1.1 states that "[a] 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. Manual § 3B1.1 cmt. n.1 (2001). There can be no question on this record that Little Japanese was at least as criminally responsible as his *subordinate*, Li, was.[2] Thus, Little Japanese qualifies as a "participant" under section 3B1.1(a), bringing the headcount to five.

■  Next, Yeh contends that even if the evidence supports a finding of five or more participants, the four-level enhancement under section 3B1.1(a) must nonetheless be set aside because "the district court failed to *identify* [the fifth] participant." Br. of Appellants at 7 (emphasis added). He argues that the enhancement "cannot apply unless the sentencing court 'identifies a participant over whom the defendant exercised managerial or organizational control.'" *Id.* at 8 (quoting *United States v. Luca*, 183 F.3d 1018, 1024 (9th Cir. 1999)). Yeh's argument is unavailing. In *United States v. Sobin*, 56 F.3d 1423 (D.C.Cir.), *cert. denied*, 516 U.S. 936, 116 S.Ct. 348, 133 L.Ed.2d 244 (1995), we held that a defendant who did not object at sentencing to the district court's failure to make factual findings to support a four-

level enhancement under section 3B1.1(a) "waived his right to challenge the enhancement on this ground." *Sobin*, 56 F.3d at 1428; *cf. United States v. Wider*, 951 F.2d 1283, 1287 (D.C.Cir.1991) (following "general rule ... that a federal appellate court does not consider an issue not passed upon below" (quoting *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976))). In such circumstances, "we are bound to uphold the district court's enhancement if supported by the record." *Sobin*, 56 F.3d at 1428. As we discussed *supra*, the record supports the district court's finding of a fifth participant. Furthermore, as we have cautioned elsewhere, "it would be both anomalous and inefficient to place [the appellant] in a better position for having neglected to raise a relevant [sentencing] argument" in district court, *United States v. Whren*, 111 F.3d 956, 960 (D.C.Cir.1997), *cert. denied*, 522 U.S. 1119, 118 S.Ct. 1059, 140 L.Ed.2d 120 (1998); had Yeh objected at sentencing to the district court's omission, the court could easily have cited back to him the five perpetrators—Yeh himself, Wang, Li, Lin Jian and Little Japanese—thereby preempting Yeh's "failure-to-identify" ground of appeal. ·

■  Finally, Yeh claims that the government failed to prove by a preponderance of the evidence that he was an organizer or leader of the smuggling activity. Once again, his contention lacks merit. Abundant evidence supports the district court's imposition of the four-level enhancement under section 3B1.1(a) for Yeh's role as an organizer or leader. First, at his plea hearing, Yeh did not contest the government's assertion that were it not for him, "the boat and the people would not have made it to America." App. of Appellee, Tab 2, at 18, 22.

---

**2.**  Li argued as much at his sentencing hearing.  *See* App. of Appellants, Tab D, at 27–29.

Second, at Yeh's sentencing, his counsel conceded that Yeh was "in charge of maintaining ... the operation of the boat." App. of Appellants, Tab A, at 5. Third, Wang testified at *his* sentencing that Yeh "was in charge of the boat" and that "[w]henever phone calls came in from Taiwan" giving instructions about the smuggling scheme, "Yeh was the one to receive it [sic]." *Id.*, Tab C, at 29. Fourth, the fact that Yeh denied the Coast Guard's request to board the WFL suggests his authority to act on behalf of those aboard. Fifth, Officer Borowczak testified that Yeh "was the one all the other enforcers ... looked to before they made any move at all." App. of Appellee, Tab 4, at 37. Sixth, Officer Ha's testimony that Yeh told him (Ha) where to find the WFL's documentation also suggests Yeh's responsibility for the entire ship.

Yeh points out that some of the evidence could lead to conclusions other than the one the district court reached—that he was an organizer or leader of the smuggling operation. For example, he observes that his knowledge of the ship's documen-

tation might merely "substantiate his role as an engineer who had knowledge of ... the ship's engines."[3] Br. of Appellants at 11. Nevertheless, because we "give due deference to the district court's application of the [G]uidelines to the facts," 18 U.S.C. § 3742(e), we cannot say that the court erred in adding a four-level enhancement to Yeh's offense level for his role as "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Accordingly, we affirm the enhancement.

■ Appellants Wang and Li both dispute the district court's imposition of five-year mandatory minimum sentences of imprisonment under 8 U.S.C. § 1324(a)(2) for attempting to bring three or more unauthorized aliens into the United States "for the purpose of commercial advantage or private financial gain." Their challenge fails.

Wang and Li claim that they were attempting to smuggle *themselves only* into the United States, that each therefore committed only one violation of the statute

---

3. Yeh suggests that the facts of the Seventh Circuit's decision in *United States v. Parmelee*, 42 F.3d 387 (7th Cir.1994), *cert. denied*, 516 U.S. 813, 116 S.Ct. 63, 133 L.Ed.2d 25 (1995), are "strikingly similar to those in the instant case." Br. of Appellants at 10. We disagree. In *Parmelee*, the Seventh Circuit found that the district court had erroneously imposed a three-level enhancement for Parmelee's role as a "manager or supervisor" in an alien smuggling ring. *Parmelee*, 42 F.3d at 395. According to the court's recital of the facts, Parmelee met unauthorized Polish aliens at Grimsby Airpark, a rural airstrip located just north of the United States–Canada border, whence he flew them in a small Piper Cherokee airplane to DuPage County Airport in West Chicago, Illinois. *Id.* at 389. From the airport, Parmelee drove them to a prearranged rendezvous point in Chicago, where he delivered the aliens to one of his co-defendants, Tadeusz Sobiecki. *Id.* In attempting to demonstrate Parmelee's role as a

"manager or supervisor," the government relied on his "receipt of money from Sobiecki for his services, his purchase of a beeper to inform Sobiecki of flight departures and arrivals, and his upkeep and rental of the plane." *Id.* at 395. The court found, however, that such activities might have been "merely inherent in Parmelee's role as pilot and [did] not necessarily indicate that Parmelee managed or supervised others." *Id.*

Contrary to Yeh's assertions, the facts here are in nowise similar to *Parmelee*'s. Unlike Yeh, Parmelee did not have (and could not have had) aboard his small aircraft several "enforcers" who "were responsible for keeping the aliens in their places" and "looked to [him] before they made any move at all." Moreover, unlike the months-long smuggling operation aboard the "slow boat [from] China," which involved hundreds of aliens, the brief flight aboard the Piper Cherokee, which involved only a handful of aliens, required less supervision.

and that under section 1324(a)(2) the three-year mandatory minimum for a first violation applies.[4] Their argument is countered by the clearly expressed will of the Congress and the undisputed facts of this case.

In 1996, the Congress amended section 1324(a)(2) in passing the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). *See* IIRIRA of 1996, Pub.L. No.104–21 208, 110 Stat. 3009–546. Before the amendment, section 1324(a)(2) mandated that punishment be administered "for each transaction constituting a violation of this paragraph, *regardless of the number of aliens involved.*" *See United States v. Ortega–Torres,* 174 F.3d 1199, 1201 (11th Cir.) (quoting 8 U.S.C. § 1324(a)(2) (1996)) (emphasis added), *cert. denied,* 528 U.S. 911, 120 S.Ct. 259, 145 L.Ed.2d 217 (1999). In section 203(d)— entitled "Applying Certain Penalties on a Per Alien Basis"—the IIRIRA deleted "for each transaction ... regardless of the number of aliens involved" and replaced it with the current phraseology, "for *each alien* in respect to whom a [smuggling] violation ... occurs." *Ortega–Torres,* 174 F.3d at 1201 (quoting IIRIRA, Pub.L. No. 104–208, 110 Stat. 3009–546,3009–566) (emphasis added).

Like the Eleventh Circuit, we are of the opinion that "[i]n changing the text of the statute, Congress clearly expressed its intent that district courts determine the penalties for alien smuggling offenses based on the number of aliens the defendant[s]

smuggled into the United States." *Id.* Both Wang and Li admitted to conduct amounting to an attempt to bring into the United States all 200 aliens aboard the WFL. Wang acknowledged that he had piloted the WFL in exchange for a reduction in his $40,000 fee. Li conceded that he was one of the chief "enforcer[s] on the boat," App. of Appellee, Tab 2, at 18, 22, and that he acted in that capacity "to save a couple of thousand dollars" of his $40,000 fare, App. of Appellants, Tab D, at 64. Accordingly, we affirm the district court's imposition of five-year sentences upon Wang and Li.

■ Appellant Li also disputes the district court's application of a two-level enhancement pursuant to U.S.S.G. § 2L1.1(b)(5) for "intentionally or recklessly creating a substantial risk of death or serious bodily injury" to the aliens aboard the WFL. Because Li did not raise his section 2L1.1(b)(5) objection at sentencing, we may reverse for "plain error" only, *see United States v. Dawson,* 990 F.2d 1314, 1316 (D.C.Cir.1993), that is, error "so obvious and substantial or so serious and manifest that it affects the very integrity of the trial process." *Id.* (quotations omitted).

Li claims that he "had no control over the conditions aboard the [WFL], ... was not responsible for [them] and should not be held accountable for them." Br. of Appellants at 15. His assertion disregards the record. Li admitted to the district court that he *was* responsible—and received compensation—"for keeping order,

---

4. Wang and Li also assert that "the penalty provisions of 8 U.S.C. § 1324(a)(2)(B)(ii) are unconstitutionally vague and ambiguous" and that "the rule of lenity should apply to all sentences imposed in this case." Br. of Appellants at 13. We reject their "conclusory assertions"—which occupy no more than one sentence of their brief—because they are not properly before this court. *See Wash. Legal Clinic for the Homeless v. Barry,* 107 F.3d 32,

39 (D.C.Cir.1997) (litigant did not properly raise issue by addressing it in "cursory fashion" with only "bare-bones arguments" (quotation omitted)); *see also Ry. Labor Executives' Ass'n v. United States R.R. Ret. Bd.,* 749 F.2d 856, 859 n. 6 (D.C.Cir.1984) (declining to resolve question "on the basis of briefing which consisted of only three sentences ... and no discussion of the relevant statutory text ... or relevant case law").

for keeping the aliens in their places[,] ... for distributing food and water to them ... [and for] permitt[ing] them to come up on top of the deck to get air and to exercise." App. of Appellee, Tab 2, at 18, 22. Notwithstanding Li's responsibilities, the aliens had suffered without food or water for at least several hours by the time the MUNRO arrived. This fact alone—to say nothing of the appalling conditions below deck—is ample evidence that Li "recklessly creat[ed] a substantial risk of ... serious bodily injury" to the aliens he was paid to help bring into the United States. The district court, therefore, committed no error, plain or otherwise, in applying to Li's offense level a two-level enhancement pursuant to section 2L1.1(b)(5).

For the foregoing reasons, the sentences of Yeh, Wang and Li are

*Affirmed.*