**UNITED STATES of America**

v.

**Bassam Gharib MAKKI, Defendant.**

Criminal No. 98–0334(PLF).

United States District Court, District of Columbia.

April 20, 1999.

Tina Elena Sciocchetti, U.S. Atty's Office, Washington, DC, for U.S.

Teresa Alva, Federal Public Defender for D.C., Washington, DC, for defendant.

## OPINION

FRIEDMAN, District Judge.

Defendant, Bassam Gharib Makki, pleaded guilty on December 16, 1998 to two counts of misuse of a passport in violation of 18 U.S.C. § 1544 and one count of possession of a false document in violation of 18 U.S.C. § 1546(a). The Court now considers three matters that relate to sentencing: (1) the government's request that the Court add two offense levels to the base offense level because defendant obstructed justice; (2) defendant's request that the Court reduce his base offense level by two levels in light of his acceptance of responsibility; and (3) the government's request that the Court depart upward to change defendant's Criminal History Category from I to IV on the basis of his 1989 German conviction for "attempting to participate in a felony causing an explosion," his 1993 U.S. visa application violations for which he was not prosecuted, and his alleged status and activities as a senior lieutenant in the terrorist organization Hizballah.

Upon consideration of the presentence investigation report prepared by the Probation Office, the parties' memoranda in

aid of sentencing, defendant's response to the government's memorandum in aid of sentencing, and defendant's filing in aid of sentencing, and having heard the arguments and proffers of counsel in open court, the Court will adjust defendant's offense level upward for obstruction of justice, will not adjust it downward for acceptance of responsibility and will consider his foreign conviction and his prior unprosecuted violations of the immigration laws but not his alleged Hizballah status or activities. The Court therefore finds that defendant's offense level is ten rather than six and that it is appropriate to depart upward from Criminal History Category I to Criminal History Category III.

## I. BACKGROUND

Defendant was arrested on September 18, 1998 outside the Brazilian Consulate in Ciudad del Este, Paraguay after he tried for the second time in two days to obtain a tourist visa to Brazil using an altered U.S. passport. The passport defendant was using bore the name of his brother, Mohamad Gharib Makki, but had defendant's picture on it. On both occasions he presented his brother's passport and claimed to be his brother and, on the second occasion, he filled out an application in Mohamad's name. Authorities from the United States arrested defendant because they believed him to be his brother Mohamad, who is a fugitive from the United States wanted in New York City for mail fraud and wire fraud.

After his arrest, defendant told representatives of the U.S. State Department in Paraguay that he was Mohamad Gharib Makki. When officials from the FBI Joint Terrorism Task Force arrived, they had a photograph of Mohamad Gharib Makki and immediately recognized that defendant was not Mohamad. Defendant then claimed to be Hassan Mohamad Makki, a Lebanese citizen and Mohamad Gharib Makki's cousin, and said that he had stolen Mohamad Gharib Makki's passport to travel to Paraguay to start a business. After defendant was transported to Miami, Florida for prosecution in the United States, he continued to maintain that he was Hassan Mohamad Makki during his initial appearance under oath before U.S. Magistrate Judge Robert L. Dube, in his interview with the U.S. Pretrial Services Agency in Miami and during removal proceedings before U.S. Magistrate Judge Peter R. Palermo. He provided Hassan Makki's birth date, wife's name, children's names and ages and other information consistent with Hassan's identity, not his own. Even after the government learned of defendant's true identity through a confidential informant, and after the government confirmed this fact through fingerprints obtained from Germany, defendant contested the truth of these facts. It was not until the presentence investigation report was being prepared by the Probation Office of this Court that defendant finally admitted his true identity as Bassam Gharib Makki.[1]

Once before this Court, defendant moved to dismiss the indictment on the grounds that the United States lacked jurisdiction over his conduct in Paraguay with the intention of traveling to Brazil. After hearing argument, the Court denied the motion because international law recognizes the right of the United States to punish conduct that undermines the integrity of the official documents of the United States. *See* Order of December 9, 1998. Defendant then pleaded guilty to the entire indictment with no plea agreement, and the matter was scheduled for sentencing. Under the Sentencing Guidelines, the base offense level for violations of both misuse of a passport under 18 U.S.C. § 1544 and possession of a false document under 18 U.S.C. § 1546(a) is a level eight, *see* U.S.S.G. § 2L2.2, and the defendant normally would be entitled to a two level downward adjustment for pleading guilty and accepting responsibility. U.S.S.G.

---

**1.** Defendant also told the Probation Officer that he uses the alias Hassan Makki because of his embarrassment about his 1989 conviction in Germany for terrorist activity.

§ 3E1.1. There is no indication that defendant has any prior convictions in the United States and he therefore has zero criminal history points. At an offense level of six and Criminal History Category of I, the Guideline sentencing range would be zero to six months.

The government has submitted voluminous materials pertaining to defendant's alleged past criminal conduct. It provided the judgment and corresponding documents from defendant's criminal trial in Germany, at which defendant was convicted and sentenced to two years in prison for attempted participation in bringing about an explosion. *See* December 22, 1989 Judgment of the First Criminal Chamber of the Munich Landgericht, Gov't Memorandum, Exh. 20 ("German Judgment"). The government also filed the statement of a State Department official and supporting documentation alleging that defendant had misrepresented his marital status, employment, residence and criminal history on immigrant visa applications he submitted to the United States Consulate in Syria in September of 1993 and again in October of 1993. *See* Statement of Gary R. Hobin. Gov't Memorandum, Exh. 25 ("Hobin Statement").[2] Finally, the government has provided a wealth of material regarding defendant's purported terrorist activities, including affidavits from two government agents that describe the allegations of confidential informants that defendant is a senior lieutenant in the Hizballah. *See* Affidavit of Michael J. Hudspeth, Gov't Memorandum, Exh. 13 ("Hudspeth Aff."); Affidavit of Hector Rodriguez, Gov't Memorandum, Exh. 23 ("Rodriguez Aff.").

**2.** The government states that it did not prosecute this offense because it was not aware of ii until after the statute of limitations had run.

**3.** At one time, our court of appeals made a distinction between the government's burden of proof in cases of obstruction based on perjury and the government's burden in all other cases of obstruction. *See United States v. Montague,* 40 F.3d 1251, 1253 (D.C.Cir. 1994). The distinction was based on a reading of the then-effective Application Note 1 to § 3C1.1, which stated that with regard to

## II. DISCUSSION

### A. *Obstruction of Justice*

Section 3C1.1 requires a two-level increase in a defendant's offense level if he or she willfully obstructed or attempted to obstruct justice during the investigation or prosecution of the offense for which he or she was convicted. U.S.S.G. § 3C1.1; *see United States v. Dozier,* 162 F.3d 120, 123 (D.C.Cir.1998). Under the Guidelines, the government must prove by a preponderance of the evidence that the defendant obstructed justice and that his conduct was willful.[3] To establish willfulness, the government must establish "that the defendant consciously act[ed] with the purpose of obstructing justice." *United States v. Monroe,* 990 F.2d 1370, 1376 (D.C.Cir. 1993) (quoting *United States v. Thompson,* 962 F.2d 1069, 1071 (D.C.Cir.1992)).

The Application Notes to Section 3C1.1 provide a list of examples of the types of conduct that qualify as obstruction of justice. They include, among other things, (1) "providing materially false information to a judge or magistrate," (2) "providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense," and (3) "providing materially false information to a probation officer in respect to a presentence or other investigation for the court." U.S.S.G. § 3C1.1 App. Note 4. While the government has not shown by a preponderance of the evidence

"alleged false testimony or statements by the defendant, such testimony or statements should be evaluated in a light most favorable to the defendant." *Id.* (quoting U.S.S.G. § 3C1.1 App. Note 1 (1994)). The U.S. Sentencing Commission, however, eliminated the distinction in 1997 when it amended Application Note 1 "so that it no longer suggests the use of a heightened standard of proof [when the court applies an enhancement for perjury]." U.S.S.G. Appendix C, amend. 566 (1997).

that defendant's misrepresentations significantly hindered the investigation, such a showing is not necessary to establish obstruction of justice by the provision of false information to a magistrate judge, a probation officer or a pretrial services agency. *See, e.g., United States v. Restrepo,* 53 F.3d 396, 397 (1st Cir.1995) (a showing of significant obstruction is not required for "materially false statements made to probation officers and, by analogy, pretrial services officers, in respect to an investigation for the court. . . ."); *United States v. Mafanya,* 24 F.3d 412, 415 (2d Cir.1994) (use of false identity before magistrate judge was obstruction of justice even when true identity discovered before detention hearing). Defendant's conduct therefore is exactly the type of misleading conduct for which the obstruction of justice enhancement was intended.

■ Defendant claims that his misrepresentations about his identity were not willful because he made them out of fear and negligence. While the Court might accept that a defendant who is transported to a foreign country could initially withhold his name from investigators out of fear, this explanation cannot account for the pervasive pattern of misleading information that defendant provided to the magistrate judges, to Pretrial Services, and to law enforcement officials. Once defendant was confronted with the falsity of his initial statement that he was Mohamad Gharib Makki, he still did not divulge his true identity. Instead, he fabricated another story, telling investigators that he was Hassan Mohamad Makki, and provided not just a false name, but a completely false identity, including Hassan Mohamad Makki's birthdate and the names and ages of his wife and children. This conduct is much more suggestive of a defendant who is trying to prevent law enforcement officials from learning his true identity and international criminal history. The Court

therefore concludes that the government has established defendant's willful obstruction by a preponderance of the evidence.

■ Defendant also argues that his misrepresentations were not material because his identity was not relevant at the time he made the false statements. A "material" misrepresentation is any "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1 App. Note 6. Defendant contends that because he did not contest his detention or the removal of his case in the Miami proceedings, his misrepresentations to Magistrate Judge Dube, Magistrate Judge Palermo and the Pretrial Services Agency could not have been material because they would not "tend to influence or affect the issue under determination." [4] This cannot be true. While defendant may not have contested his treatment, the identity and history of a defendant are always relevant to a court's rulings, whether they concern detention, removal or sentencing. *See United States v. Mafanya,* 24 F.3d at 415 (use of false identity in detention hearing was obstruction of justice); *United States v. Montano–Silva,* 15 F.3d 52, 53 (5th Cir. 1994) ("It would be a rare situation in which a defendant's identity is not material"); *United States v. McDonald,* 964 F.2d 390, 392–93 (5th Cir.1992) (using false identity before a magistrate judge is obstruction of justice). Defendant's misrepresentations to Magistrate Judge Palermo and the Pretrial Services Agency in Miami were material.

Finally, the government has established by a preponderance of the evidence that defendant continues to misrepresent facts regarding his identity to this Court. Defendant told the Probation Office of this Court that "[h]e assumed the name Hassan Mohamad Makki due to the great shame he felt and the potential problems that he would face in his country [Leba-

---

4. The Court does not rely on defendant's misstatements in his hearing before Magistrate Judge Dube because defendant was not provided with an interpreter or an attorney after he had requested them.

non] due to his [German] conviction." Presentence Investigation Report ¶ 14. None of the documents provided to the Court by the parties, including defendant's 1993 visa applications and the documents regarding his business in Lebanon, however, demonstrate that defendant has ever used this alias in Lebanon or anywhere else. In fact, defendant has provided no evidence of his use of the name Hassan Mohamad Makki before he used it in trying to mislead the court and law enforcement officers in Miami. This misrepresentation is material to the very inquiry undertaken by the Probation Officer in preparing the presentence investigation report because it speaks to defendant's motivation for his obstructive conduct in Miami. The Court also finds that this misrepresentation was made willfully given the pattern of deceptive conduct in which defendant has engaged in this case.

### B. Acceptance of Responsibility

■ The Sentencing Guidelines provide for a two-level decrease in a defendant's offense level if he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). If the Court finds that the defendant obstructed justice, however, it may only depart downward for acceptance of responsibility in "extraordinary cases," because ordinarily an enhancement for obstruction of justice indicates that the defendant is attempting to evade responsibility for his criminal conduct. *Id.* App. Note 4; *see United States v. Dozier,* 162 F.3d at 127. The burden is on the defendant to demonstrate that his case is "extraordinary." *Id.*

■ Defendant contends that this is an "extraordinary" case because he immediately admitted the offense to the arresting officers and pleaded guilty to the entire indictment, thereby allowing the government to avoid the cost of trial, and because he clearly accepted and demonstrated personal responsibility for the offense. Defendant did not truly accept personal responsibility for his offense, however, until

he admitted his true identity, which he acknowledged only grudgingly and only after the government had demonstrated his true identity through fingerprint analysis. Only then and after losing a motion to dismiss did he plead guilty quickly and seek a prompt sentencing, apparently in the hope that sentencing would take place before the Court learned about his conviction in Germany, his 1993 visa applications and his other alleged activities. This is not an "extraordinary case" in which adjustments for obstruction of justice and acceptance of responsibility apply simultaneously. *See United States v. Smaw,* 993 F.2d 902, 905 n. 2 (D.C.Cir.1993) (case where defendant pleaded guilty but made material misrepresentation to probation officer is not "extraordinary" case justifying both an adjustment for obstruction of justice and an adjustment for acceptance of responsibility).

### C. Criminal History

The defendant has no criminal convictions in the United States and therefore has zero criminal history points under the Guidelines. Under a traditional analysis, the defendant therefore would have a Criminal History of I. The government, however, requests that the Court depart from the otherwise applicable Guideline sentencing range to a Criminal History Category of IV pursuant to Section 4A1.3 of the Sentencing Guidelines. *See* U.S.S.G. § 4A1.3. Section 4A1.3 allows the Court to depart upward "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3. "Reliable information" includes, among other things, (1) "prior sentence(s) not used in computing the criminal history category (*e.g.,* sentences for foreign or tribal offenses)," and (2) "prior similar adult criminal conduct not resulting in a criminal conviction." *Id.* The government has the burden of justify-

ing any upward departure by a preponderance of the evidence. *See United States v. Alberto–Genao*, 28 F.Supp.2d 658, 663 (D.D.C.1998) ("Whenever the government seeks an upward adjustment or upward departure that might lead to an increase in the sentence under the Sentencing Guidelines, it has the burden of proof by a preponderance of the evidence").

 While the Court has discretion to determine whether a criminal history category accurately reflects a defendant's criminal history, *United States v. Robinson*, 158 F.3d 1291, 1294 (D.C.Cir.1998), any adjustments under Section 4A1.3 must be clearly explained and justified. *See United States v. Allen*, 898 F.2d 203, 204–05 (D.C.Cir.1990) (when going above a Criminal History Category of VI, "the court should state definitively its reasons for that determination"). When departing upward, the Court generally must explain why each lower criminal history category is not sufficient to account for the defendant's criminal history. *See id.* at 205; *see also United States v. Tropiano*, 50 F.3d 157, 162 (2d Cir.1995) ("[T]he district court must pause at each category to consider whether that category adequately reflects the seriousness of the defendant's record. Only upon finding a category inadequate may the court proceed to the next category").[5] In determining what criminal history category most accurately reflects a defendant's true criminal history, a court may evaluate the defendant's unconsidered

conduct or attributes by analogy to factors that are considered under the Guidelines. *See* U.S.S.G. § 4A1.3 ("In considering a departure under this provision, the Commission intends that the court use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable"). *See also United States v. Jackson*, 921 F.2d 985, 991 (10th Cir.1990) ("The 'extrapolation from ... or ... analogy to' the Guidelines we have recommended should be a relatively simple procedure in departures based on criminal history") (quoting *United States v. Gardner*, 905 F.2d 1432, 1438 (10th Cir.1990)).

In this case, the Court must ascertain whether "reliable information" exists to indicate that a Criminal History Category of I understates either the "seriousness of the defendant's past criminal conduct" or the "likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3. Regarding the "seriousness of the defendant's past criminal conduct," the government asserts that an upward departure is justified because a Criminal History Category of I does not reflect (1) defendant's 1989 conviction in Germany, (2) defendant's false statements on his 1993 visa applications, and (3) defendant's other alleged terrorist activities. The government also contends that defendant's purported membership in the Hizballah and his alleged terrorist activities increase the "likelihood that the defendant will commit other crimes."[6]

---

5. There is a conflict in the circuits on this point, *see United States v. Lambert*, 984 F.2d 658, 663 (5th Cir.1993); *United States v. Jackson*, 921 F.2d 985, 991 (10th Cir.1990), but our circuit has not yet addressed it directly.

6. The government requests the Court to depart upward to a Criminal History Category of IV. Under the government's analysis, the departure is justified on the basis of a holistic evaluation of defendant's alleged past conduct and criminal propensities. The government also argues that this case is similar to *United States v. Kikumura*, 918 F.2d 1084 (3d Cir. 1990), in which the government claims that the Third Circuit assigned a Criminal History Category of IV to a defendant accused of

terrorism. As an initial matter, the government's reliance on the *Kikumura* case to support its request for a departure to a Criminal History Category of IV is misplaced. The court in *Kikumura* in fact approved an upward departure to a Criminal History Category of VI. *See United States v. Kikumura*, 918 F.2d 1084, 1115 (3d Cir.1990) ("[W]e think it would be reasonable to analogize Kikumura to a category VI offender"). It is also noteworthy that because of the magnitude of the departure in *Kikumura*, the Third Circuit required proof by clear and convincing evidence, not merely a preponderance, before approving the departure. *See id.* at 1101–02. Most importantly, the decision to depart under Section 4A1.3 is a fact specific inquiry

The Court concludes that defendant's criminal conviction in Germany and the misrepresentations made in connection with his 1993 visa applications should be considered as reliable information justifying a departure under Section 4A1.3, but that his alleged membership in the Hizballah and his alleged terrorist activities should not.

■ A foreign sentence is explicitly contemplated as a grounds for an upward departure under Section 4A1.3. *See* U.S.S.G. § 4A1.3(a).[7] The German Judgment provides a summary of the court proceedings and testimony which led to defendant's conviction for "attempting to participate in a felony of causing an explosion." *See* German Judgment at 19. Among the factual findings the German court made were that defendant was conspiring with others to conduct surveillance of American and Israeli sites in, Germany in order to identify potential targets for terrorist bombing attacks and that defendant was personally involved in such surveillance. *See id.* at 19–20. The German court also found that defendant had attempted to send a message to a person in Lebanon stating in code that he had located United States and Israeli targets in Germany and that he would carry out attacks on them if he was provided with weapons and dynamite. *See id.* at 5–10. The German court rejected his defense that he acted under duress. *See id.* at 11–15. While defendant argues that the Court should not give full credence to the fairness of criminal proceedings and judgments in all foreign countries, the Court has no reason to view German courts with any skepticism. Defendant was represented by counsel in the German proceedings, was confronted with the witnesses against

him and was permitted to testify in his own behalf. The Court will consider defendant's German conviction.

■ The defendant was sentenced by the German court to two years in prison. By analogy to the Guidelines, *see* U.S.S.G. § 4A1.3; *United States v. Jackson,* 921 F.2d at 991, if a court in this country had sentenced the defendant in that case, this Court would then assign three criminal history points to that conviction. *See* U.S.S.G. § 4A1.1(a) (three points added for "each prior sentence of imprisonment exceeding one year and one month"). Three criminal history points would increase defendant's Criminal History Category from Category I to Category II. The Court therefore will increase defendant's Criminal History Category to II on the basis of the German conviction.

■ A Criminal History Category of II, however, still understates defendant's criminal history because it does not consider his misrepresentations on his 1993 visa applications. The 1993 visa documents contain patently false statements regarding defendant's marital status, lack of paternity, employment, residence and criminal history. *See* Hobin Statement and Application for Immigrant Visa and Alien Registration, Gov't Memorandum, Exh. 25. Most significantly, defendant stated that he had never been arrested, convicted or in prison. *See id.* at 2. Defendant's false statements in 1993, made under oath, constitute criminal offenses in violation of 18 U.S.C. § 1546(a) (presenting visa documents containing false statements) and 18 U.S.C. § 1001 (false statements to United States government officials). Because defendant's false

and must be based on the facts of the case before the Court, not the facts of the *Kikumura* case.

7. Defendant argues that the statement in Section 4A1.3 that an upward departure is warranted when a defendant has "several previous foreign sentences" means that the Court should disregard a single foreign conviction.

*See* U.S.S.G. § 4A1.3. This interpretation, however, is contradicted by the language of the Guidelines. The Guidelines are explicitly written to anticipate either one prior sentence or multiple prior sentences that were not used in computing criminal history. *See id.* ("prior *sentence(s)* not used in computing the criminal history category") (emphasis added).

statements on his visa applications involve misrepresentations made on immigration documents, they are similar offenses to the passport offense for which he pleaded guilty in this case. The 1993 conduct therefore constitutes "prior similar adult criminal conduct not resulting in a criminal conviction," and is thus precisely the type of conduct that justifies a criminal history category departure. *See* U.S.S.G. § 4A1.3.

Defendant contends that the Court should not consider his misrepresentations on his 1993 visa applications because it is conduct that is already taken into account by Section 2L2.2 of the Guidelines. Section 2L2.2 states that the Court should increase the offense level for the fraudulent use of a passport if the defendant has already sustained another conviction for an immigration offense in the past. U.S.S.G. § 2L2.2(b)(2)(A). Defendant argues that the Court should read this provision as the Guidelines' exclusive consideration of prior immigration offenses in the context of sentencing for a subsequent immigration offense and thus should read it to exclude the consideration of uncharged immigration offenses under Section 4A1.3. *See* 18 U.S.C. § 3553(b). The Guidelines, however, anticipate the consideration of both past *convictions* under Section 2L2.2 and prior *uncharged conduct* under Section 4A1.3. Section 2L2.2 only governs the consideration of past convictions and does not speak to the consideration of past uncharged conduct, while Section 4A1.3 gives the Court discretion to consider similar criminal conduct that did not result in a conviction if the failure to do so would significantly understate the defendant's past history.

If defendant had been charged with and convicted of the 1993 misrepresentations on his visa applications, he would have had at least two additional criminal history points under the Guidelines. A conviction for submitting fraudulent visa applications would have had a base offense level of eight under Section 2L2.2. An offense level of eight and a Criminal History Category of II (defendant's criminal history after consideration of the 1989 German conviction) would result in a Guideline sentencing range of 4–10 months, and a sentencing court therefore would have sentenced defendant to at least 120 days in prison. *See* U.S.S.G. § 4A1.1(b) (two points added for "each prior sentence of imprisonment of at least sixty days" that is not already considered).[8] When the Court adds these two criminal history points to the points defendant would have received as a result of his German conviction, it concludes that defendant would have had at least five criminal history points if he had been convicted of his prior conduct in the United States. Because five points would give defendant a Criminal History Category of III, and because the Court finds that this criminal history category accurately reflects "the seriousness of the defendant's past criminal conduct," the Court departs upward to assign defendant a Criminal History Category of III.

Finally, the government requests that the Court depart even further on the basis of defendant's alleged terrorist activities with and membership in the Hizballah. At the sentencing hearing, government counsel argued that defendant's membership in a terrorist organization warrants an upward departure both because defendant's past criminal conduct is

---

**8.** The analogy, of course, is not perfect and the Court cannot know for certain what a sentencing court would have done. Indeed, if defendant had pleaded guilty to the 1993 uncharged offense, he probably would have had an adjusted offense level of six rather than eight and the Court could have imposed a sentence of as little as 30 days in prison (the range for offense level six and Criminal History Category II is 1–7 months). This lesser sentence, however, would have still given defendant an additional criminal history point, which, when added to the three points he would have received for his German conviction, still would have given him a Criminal History Category of III.

understated and because it indicates that defendant is more likely to continue his criminal activities. *See* U.S.S.G. § 4A1.3. To support its assertion, the government relies primarily on defendant's past conviction for terrorist activities in Germany, defendant's presence in the tri-border region where the boundaries of Paraguay, Brazil and Argentina meet and in which the United States has noted an increased level of terrorist activity, and two affidavits from United States law enforcement agents relaying information provided by confidential informants. The affidavit of Special Agent Michael J. Hudspeth of the United States Department of State describes the allegations of a confidential informant in Lebanon, while the affidavit of Agent Hector Rodriguez of the Federal Bureau of Investigation describes the allegations of a confidential informant who lives in the tri-border region. *See* Hudspeth Aff. ¶ 3; Rodriguez Aff. ¶ 2.

Defendant contends that the Court should not consider the information contained in the two affidavits because they contain hearsay within hearsay and lack any corroboration. *See United States v. Chunza–Plazas,* 45 F.3d 51, 58 (2d Cir. 1995). Section 6A1.3 of the Guidelines allows the Court to "consider relevant information without regard to its admissibility under the rules of evidence at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3; *see United States v. Hill,* 131 F.3d 1056, 1065 (D.C.Cir.1997). "Out-of-court declarations by an unidentified informant may be considered where there is good cause for the non-disclosure of the informant's identity and there is sufficient corroboration by other means." U.S.S.G. § 6A1.3 commentary; *see United States v. Fatico,* 579 F.2d 707, 713 (2d Cir.1978). Here the government has demonstrated good cause for the non-disclosure of the informants' identities, and the agents' affidavits demonstrate the past reliability of the informants. *See* Hudspeth Aff. ¶¶ 3,7; Rodriguez Aff. ¶ 2.

The problem is that much of the information contained in the affidavits is conclusory, not factual, and where the information is factual, the information provided by the informant with respect to the defendant's activities has not been corroborated. *See United States v. Ortiz,* 993 F.2d 204, 208 (10th Cir.1993) (confidential informant's statements must have "sufficient corroboration by other means"); *cf. United States v. Fatico,* 579 F.2d at 713 (confidential informant's information regarding defendants' mafia membership was corroborated by defendants' co-conspirators). In fact, while both Agent Hudspeth and Agent Rodriguez attest to the reliability of their informants in the past, *see* Hudspeth Aff. ¶ 3; Rodriguez Aff. ¶ 2, only Agent Hudspeth relays any information about the defendant that was corroborated by any means. Agent Hudspeth's confidential informant provided identifying information about defendant that was corroborated by the defendant himself when he admitted to his true identity. *See* Hudspeth Aff. ¶¶ 4–5. With regard to defendant's alleged past terrorist conduct as a member of the Hizballah, however, the government's affidavits do not provide any factual basis for this claim.

While there is extensive information provided with respect to the terrorist activities of the Hizballah itself and the activities of other persons, the only specific conduct alleged by the government on the part of defendant is the conduct that resulted in his German conviction and the misrepresentations made in his visa applications in 1993 and in 1998. The Court has already considered this conduct in deciding to depart upward to a Criminal History Category of III. The government also alleges that defendant was conspiring to commit criminal acts during his trip to South America, but it does not allege any specific conduct, much less provide any evidence. *See* Hudspeth Aff. ¶ 6 ("[W]hatever Bassam's activities were in Paraguay, Bassam was sent to Paraguay at the ex-

press direction of [Hizballah Secretary] Nasrallah and was executing specific functions of the Hizballah"). Thus, there is no grounds to depart upward for defendant's alleged past criminal conduct as a member of the Hizballah.

Neither affidavit offered by the government provides anything but conclusory statements that defendant was engaged in terrorist activity on behalf of the Hizaballah. When the Court questioned government counsel at the sentencing hearing about the facts underlying these conclusory statements, counsel was unwilling to provide any factual underpinnings for the conclusions because to do so "would compromise the identity of the informant." Transcript of April 12, 1999 Sentencing at 20.[9] While concern for and protection of government informants, of course, is most legitimate and often essential to law enforcement and the personal safety of important sources of information, the government also must prove facts by a preponderance of the evidence in order to obtain an upward departure under the Sentencing Guidelines. It simply has not done so in this instance.

The government also has not provided enough evidence for the Court to draw any inferences about defendant's terrorist activities from his presence in a South American region of high terrorist activity. As the government itself noted, "[t]he tri-border area is home to more than 12,000 Arab immigrants, most of whom have settled in the area for legitimate commercial purpose." Gov't Memorandum at 12. While the affidavit of Agent Rodriguez provides information from the confidential informant that defendant met with Hizballah figures in the tri-border region and was accompanied by a key Hizballah facilitator throughout his trip there, see Rodriguez Aff. ¶¶ 6–8, 12, these assertions are not a sufficient basis from which to draw the inferences the government seeks. Even if these facts were corroborated, the mere fact that defendant meets with or associates with others who may be Hizballah members is not enough to find that defendant himself had nefarious objectives while in the tri-border region. Cf. United States v. Patriarca, 807 F.Supp. 165, 169–70 (D.Mass.1992) (government must prove specific conduct, not just mafia membership, by preponderance of the evidence for court to depart upward under Section 4A1.3), vacated on other grounds by United States v. Carrozza, 4 F.3d 70 (1st Cir. 1993).

Finally, the government contends that defendant's alleged membership and/or high level position in the Hizballah justifies a departure under Section 4A1.3 because it suggests that such membership makes him more likely to commit criminal acts in the future. Defendant may well be a senior lieutenant in the Hizballah, and Agent Hudspeth's confidential informant states that he has "personal knowledge" that defendant holds such a position, see Hudspeth Aff. ¶ 2, but there is no underlying factual predicate presented in the Hudspeth affidavit that establishes the basis for the informant's knowledge. The Court

9. MS. SCIOCCHETTI [the prosecutor]: But, Your Honor, an informant tells you five facts. The fifth of which [is] he is a lieutenant in the Hizballah.
THE COURT: That's not a fact. That's a conclusion. What is the basis for that conclusion? What are the facts that the confidential informant told you?
MS. SCIOCCHETTI: With respect to what?
THE COURT: I mean I can say I know you and your brother and sister … and, by the way, she's—she deals in narcotics. That would not be enough in a criminal case. I would have to say I've dealt with you in narcotics or I sold you narcotics or I bought narcotics from you or I observed you or whatever. I can't say you're a drug dealer. That's not evidence.
MS. SCIOCCHETTI: Well, Your Honor, I think the—the affidavit does not set forth each of the factors—
THE COURT: What are the facts? What are the factors?
MS. SCIOCCHETTI: I'm not prepared to say because it would compromise the identity of the informant.
Transcript of April 12, 1999 Sentencing Hearing at 20.

cannot accept the informant's assertion of personal knowledge without being able to evaluate the source and accuracy of such knowledge and the reliability of the information on which it is based. See U.S.S.G. § 6A1.3. The statement that Agent Rodriguez's informant, who does not know the defendant, has "learned that Makki was involved in the military arm of Hizballah" adds nothing. Rodriguez Aff. ¶ 4. The government simply has not proven the defendant's membership in the Hizballah by a preponderance of the evidence. Even accepting the proposition that membership in an organization alone would be enough to enhance a defendant's sentence, the simple invocation of the word "Hizballah"—like the word "Mafia" in other cases—is not a basis for disregarding the relevant burden of proof and other due process protections to which any defendant is entitled. *See United States v. Patriarca*, 807 F.Supp. at 200–09. As the government has not established defendant's Hizballah membership or terrorist activities by a preponderance of the evidence, the Court will not increase his criminal history category based on these allegations.

For all of the foregoing reasons, the Court determines under Section 4A1.3 of the Sentencing Guidelines that it is appropriate to depart from the otherwise applicable Criminal History Category of I to Criminal History Category III. With an offense level of 10 and a Criminal History Category of III, defendant's Guideline sentencing range is 10 to 16 months.

SO ORDERED.